Ronald F. GOODLOE, Appellant,

v.

Robert PARRATT, Warden, Nebraska
Penal & Correctional
Complex, Appellee.

No. 78–1560.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1978.

Decided Aug. 28, 1979.

Nanfito & Nanfito, Omaha, Neb., Charles A. Nanfito and James A. Nanfito (argued), Omaha, Neb., on brief, for appellant.

Paul L. Douglas, Atty. Gen., C. C. Sheldon, Asst. Atty. Gen. (argued), Lincoln, Neb., on brief, for appellee.

Before LAY and HENLEY, Circuit Judges, and WANGELIN,* District Judge.

LAY, Circuit Judge.

This unusual state habeas corpus case is an extremely perplexing one with a harsh result. The petitioner, Ronald F. Goodloe, was driving his automobile on the evening of May 7, 1975, when a police officer in the community of Blair, Nebraska saw him and suspected he was driving with a suspended driver's license. Goodloe was well known to the police; he had been convicted of willful and reckless driving on four other occasions and had two state felony convictions. Seeing the police car's flashing lights, Goodloe accelerated to a high rate of speed, and the officer gave chase. Goodloe was finally apprehended and charged with willful and reckless driving (third offense), Neb.Rev. Stat. § 39–669.06 (1974), operating a motor vehicle to avoid arrest, Neb.Rev.Stat. § 60–430.07 (1974), and being an habitual criminal, Neb.Rev.Stat. § 29–2221 (1964). He was convicted by a jury on all counts, and sentenced to two concurrent 10 to 15 year terms of imprisonment.[1] The Nebraska Supreme Court affirmed the conviction, but modified the sentence to two concurrent 10 year terms.[2] Goodloe sought a writ of habeas corpus in federal district court. Upon denial this appeal followed.

The scenario began when Goodloe was tried on one count of a two count information for driving with a suspended license in Washington County court. Much to the chagrin of the prosecutor, the conviction was reversed by the district court for insuf-

---

* The Honorable H. Kenneth Wangelin, United States District Court for the Eastern and Western Districts of Missouri, sitting by designation.

1. In this day of supposedly modern criminal law and procedure, it is somewhat unusual, to say the least, for an individual to receive a 10 year penitentiary sentence for driving a motor vehicle in a willful and reckless manner without causing damage to persons or property. The severity of the sentence seems anachronistic and brings to mind the following statement by Justice Benjamin N. Cardozo:

> I have faith . . . that a century or less from now, our descendants will look back upon the penal system of today with the same surprise and horror that fill our own minds when we are told that only about a century ago 160 crimes were visited under English law with the punishment of death, and that in 1801 a child of 13 was hanged at Tyburn for the larceny of a spoon. Dark chapters are these in our history of law. We think of them with a shudder, and say to ourselves that we have risen to heights of mercy and of reason far removed from such enormities. The future may judge us less leniently than we choose to judge ourselves.

B. N. Cardozo, *What Medicine Can do for Law,* in Selected Writings 381 (M. E. Hall ed. 1947).

2. In 1975, when Goodloe was indicted and tried, operating a motor vehicle to avoid arrest was punishable in several different ways. Neb. Rev.Stat. § 60–430.07 (1974). The minimum penalty was a fine not to exceed $500, and the individual could be imprisoned in the county jail for up to six months or in the penitentiary for one to three years. If the maximum punishment were imposed, the offense would be a felony under Nebraska law. *State v. Stanosheck,* 167 Neb. 192, 196, 92 N.W.2d 194, 197 (1958) (quoting *Goedert v. Jones,* 150 Neb. 783, 784, 36 N.W.2d 119, 120 (1949)). The statute was amended to provide that a person operating a motor vehicle to flee in an effort to avoid arrest for violation of a misdemeanor or traffic infraction could not be imprisoned as for a felony, but would be guilty of a class III misdemeanor. A person operating a motor vehicle to flee in an effort to avoid arrest for a felony would be punished for a class IV felony. § 60–430.07, *as amended by* L.B. 149, effective May 23, 1979. If Goodloe were indicted and convicted today of avoiding arrest for driving with a suspended license, as was the charge in the complaint and warrant, he would be found guilty of a misdemeanor, and the habitual offender statute would not be applicable.

Because of revisions in the Nebraska Criminal Code, it is no longer clear if willful and reckless driving (third offense) is a felony for purposes of the habitual criminal statute. *See* §§ 29–102 (repealed 1978); 28–105(3), 107 (1978 Supp.). Thus, Goodloe's 10 year sentence would appear to be no longer possible under the amended Nebraska statutes for any of the offenses charged. In 1975, however, through the exercise of astute prosecutorial discretion in stacking criminal statutes one upon another, a 10 year sentence was not only possible, but due to the Nebraska habitual criminal act's mandatory sentencing provisions, inevitable upon conviction of the charges.

ficient evidence. However, sweet prosecutorial revenge was in the offing. Following reversal, the State amended the filed information to include not only the remaining count of operating a motor vehicle to avoid arrest, but also a second count of being an habitual criminal. This information was consolidated with another information, previously filed, which alleged one count of willful and reckless driving (third offense) and a second count of being an habitual criminal.[3]

The 15 year concurrent sentences (later modified to 10), were made possible in the following manner. The prosecutor charged avoidance of arrest as a felony. Willful and reckless driving, normally a misdemeanor, becomes a felony by operation of enhanced penalty provisions when it is a third offense or subsequent offense, and the prosecutor charged third offense.[4] Habitual offender counts were added to each information. Upon conviction of a felony committed in Nebraska, proof of two prior felony convictions results in imposition of a mandatory 10-year prison term under the habitual criminal statute. Neb.Rev.Stat. § 29–2221 (1964).[5] Thus, even with use of concurrent sentences, no Nebraska court could give Goodloe a term of imprisonment less than 10 years for what was an attempt to evade arrest for the misdemeanor of driving with a suspended license.

Although Goodloe's counsel raises several distinct points on appeal we find these can be basically summarized as:

1. Due process and double jeopardy challenges to prosecution for both operation of a motor vehicle to avoid arrest and willful and reckless driving when the evidence demonstrating operation of the vehicle to avoid the arrest was the same as that which showed the reckless driving. Stated in another way, the issue is whether a person in a motor vehicle being pursued by a police officer for reckless operation of the vehicle may be charged with avoidance of arrest for the same reckless driving incident.

2. Due process and double jeopardy challenges to simultaneous application of two penalty enhancement statutes, one that made a subsequent misdemeanor offense into a felony, (i. e., third offense reckless driving), and an habitual criminal statute that enhanced the penalty for this offense upon proof of conviction of prior felonies.[6]

---

**3.** Goodloe offered stipulations, affidavits from two Nebraska county attorneys, which state that for the past twenty years or so neither knew of cases in which the habitual criminal act was applied when willful and reckless driving (third offense) was charged.

**4.** The possible term of imprisonment for the first offense of willful and reckless driving is a maximum of 30 days, while the maximum term for a second offense is 60 days. Neb.Rev.Stat. §§ 39–669.04–.05 (1974). Upon a third or subsequent conviction, imprisonment in the Nebraska Penal and Correctional Complex for not less than one year nor more than three years is mandatory. § 39–669.06 (1974). Thus, although the offense is unlabeled, the third conviction became a felony by virtue of the Nebraska criminal code's general definition of felony at the time of Goodloe's indictment and trial: "[t]he term felony signifies such an offense as may be punished with death or imprisonment in the Nebraska Penal and Correctional Complex. . . ." Neb.Rev.Stat. § 29–102 (repealed 1978); *State v. Knoles*, 199 Neb. 211, 213, 256 N.W.2d 873, 874 (1977); *see also Bright v. State*, 125 Neb. 817, 252 N.W. 386 (1934).

**5.** At a subsequent hearing the court found Goodloe was guilty of being an habitual criminal, as charged in count II of each information. In support of the habitual charges, the prosecution proved two 1972 third offense willful and reckless driving convictions, (each using the same two prior convictions to enhance the penalty), felonies under Nebraska law. The judge relied instead, however, on proof of a 1961 state burglary conviction, a 1972 state possession of controlled substance conviction, and 1973 federal convictions for possession of and receipt of a firearm in interstate commerce by a convicted felon.

**6.** Goodloe also attacks the harsh sentence resulting from application of the habitual offender act under the Eighth Amendment. We agree with the district court that there is no merit to the claim. The severity of the sentence, arguably disproportionate and excessive for a traffic offense, was enhanced because of repetitive criminal conduct. Such legislative judgment on sentencing is permissible, and habitual criminal statutes have been upheld against Eighth Amendment challenges. *See Spencer v. Texas*, 385 U.S. 554, 559–60, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *Wessling v. Bennett*, 410 F.2d 205,

■ *Avoidance of Arrest—Due Process.* We need not pass on the double jeopardy question raised, because we hold the conviction for operation of a motor vehicle to avoid arrest should be set aside because of violations of Goodloe's right to due process of law, guaranteed by the Fourteenth Amendment to the United States Constitution.[7] In the state court Goodloe challenged, as violative of due process, the vagueness of the statute which defines the crime of operating a motor vehicle to avoid arrest as applied in his case.[8] He makes the same argument here. We need not pass on the constitutionality of the statute, but relate the challenge to the statute only in a collateral sense, as it affects the fairness of Goodloe's conviction under it. *See State v. Etchison,* 190 Neb. 629, 211 N.W.2d 405 (1973), *cert. denied,* 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974); *Heywood v. Brainard,* 181 Neb. 294, 147 N.W.2d 772 (1967). The statute's lack of specificity in definition of criminal conduct is reflected in disputes which arose at trial over whether a specific prior violation of law had to be alleged and proved for conviction. While we hold Goodloe's trial was fundamentally unfair due to lack of fair and reasonable notice of the offense charged, our conclusion is derived from a combination of factors: the specificity of the complaint and arrest warrant that alleged flight from arrest for driving with a suspended license, the general language of the information, the trial court rulings on the elements of the offense, the mid-trial switch in the prosecution's case in chief, and the instructions given.

It is clear from the arrest warrant and the first information filed, statements made in court and the progress of the trial, that the State based its avoidance of arrest charge under the statute on the theory that the arrest Goodloe was avoiding was an arrest based upon probable cause that he was driving with a suspended license. During trial, the court ruled proof Goodloe had violated a state law was required for the State to sustain its charge of avoiding arrest. Thus, because Goodloe had been previously acquitted on the suspended license charge, the district court ruled that proof of flight from arrest for driving with a suspended license was precluded and sustained Goodloe's motion to exclude evidence concerning suspension of his license.[9] Thereafter the State, without amending the information, changed its theory of prosecution[10] and attempted to prove flight from

---

207 (8th Cir.) *cert. denied,* 396 U.S. 945, 90 S.Ct. 384, 24 L.Ed.2d 248 (1969). Nor does the unfettered discretion given the prosecutor under the Nebraska statute render it unconstitutional. *Brown v. Parratt,* 560 F.2d 303 (8th Cir. 1977).

7. We do not make the discretionary decision to apply the concurrent sentence doctrine. Even if we held the attack made on the willful and reckless driving conviction failed to disclose a constitutional infirmity, we could not say there is no possibility that adverse collateral consequences would flow from the avoidance of arrest conviction if it were not reviewed. *United States v. Belt,* 516 F.2d 873, 876 (8th Cir. 1975), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 790, 46 L.Ed.2d 646 (1976).

8. Neb.Rev.Stat. § 60–430.07 (1974) reads as follows:

*Operating motor vehicle to avoid arrest; penalty.* It shall be unlawful for any person operating any motor vehicle to flee in such vehicle in an effort to avoid arrest for violating any law of this state. Any person violating the provisions of this section shall, upon conviction thereof, be either (1) fined in a sum not exceeding five hundred dollars, (2) imprisoned in the county jail for not to exceed six months, (3) imprisoned in the Nebraska Penal and Correctional Complex for a period not less than one year nor more than three years, or (4) punished by both such fine and imprisonment. The court shall, as a part of the judgment of conviction, order such person not to operate any motor vehicle for any purpose for a period of one year from the date of his release from imprisonment, or in the case of a fine only, for a period of one year from the date of satisfaction of the fine.

9. The correctness of the state district court's ruling is not before us. Even if the State were not able to produce competent evidence to prove that Goodloe was driving with a suspended license, the record indicates the officer had a good faith suspicion and could have stopped him for questioning.

10. In the habeas proceeding in the federal district court, Judge Denney found this to be the case, observing in his opinion:

Referring to the language of the arrest warrant, Goodloe established the undisputed fact

arrest for any of four violations, among them willful and reckless driving. The court allowed the switch, but because of its concern over the issue of fair notice to Goodloe of the case he had to meet, it specified the underlying violation and instructed the jury that it must find, as an element of the offense of operating a motor vehicle to avoid arrest, that Goodloe "had violated a law of this State, to-wit: Operating a motor vehicle in such a manner as to indicate a willful disregard for the safety of persons or property . . . ." [11]

The fundamental right "to be informed of the nature and cause of the accusation," guaranteed criminal defendants by both the Nebraska and United States Constitutions, U.S.Const. Amend. VI; Neb.Const. art. 1, § 11, is implemented primarily by charging papers which contain the elements of the offense so as to fairly inform a defendant of the charge against which he must defend. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Brown,* 540 F.2d 364, 371 (8th Cir. 1976); *State v. Harig,* 192 Neb. 49, 56–57, 218 N.W.2d 884, 889 (1974). This most basic ingredient of due process, a person's right to reasonable notice of the charge against him, is incorporated in the Fourteenth Amendment to the United States Constitution and thus cannot be abridged by the states. *See In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *Cole v. Arkansas,* 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948); *DeJonge v. Oregon,* 299 U.S. 353, 362, 57 S.Ct. 255, 81

L.Ed. 278 (1937); *Watson v. Jago,* 558 F.2d 330, 338 (6th Cir. 1977).[12]

An information in the words of the statute creating the offense will generally suffice, *Hamling v. United States,* 418 U.S. at 117, 94 S.Ct. 2887, but the requirement of fair notice is only met if "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id.* (quoting *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1882)); *see also State v. Abraham,* 189 Neb. 728, 729–30, 205 N.W.2d 342, 343–44 (1973).

The indictment upon which Goodloe was tried charged that he did, in the words of the statute, "unlawfully operate a motor vehicle to flee in such vehicle in an effort to avoid arrest for violating any law of this State." There is no indication from this statutory language that, as the trial court held and instructed the jury, an additional element must be proven for conviction: actual commission of the violation of state law for which the defendant fled arrest. Once prior violation of a specific state statute became an element of the offense by virtue of the trial court ruling, Goodloe was entitled not only to notice of that general fact, but also to specific notice of what law he was alleged to have violated. *See Keck v. United States,* 172 U.S. 434, 437, 19 S.Ct. 254, 43 L.Ed. 505 (1899); *United States v. Cruikshank,* 92 U.S. 542, 565–66, 23 L.Ed.

that the prosecution originally intended to prove that the preexisting violation of law was the misdemeanor of driving on a suspended license.

The reversal of the county court's decision foreclosed the State from pursuing this theory. Forced to adopt another tack, the prosecution asserted that the defendant could be found guilty of fleeing to avoid arrest for the offense of willful reckless driving.

11. The instruction, at least insofar as it stated that the jury must find Goodloe had violated a law of the state and was fleeing in an effort to avoid arrest for that violation, was upheld by the Nebraska Supreme Court as a correct statement of the law. *State v. Goodloe,* 197 Neb. 632, 637, 250 N.W.2d 606, 610 (1977).

12. While the Due Process Clause does not require states to observe Fifth Amendment provisions regarding indictment, it does guarantee state prisoners a fair trial. *Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). Sufficiency of an indictment or information is primarily a question of state law, but violations of due process arising from lack of fair and reasonable notice are cognizable in habeas corpus. *See, e. g., Ridgeway v. Hutto,* 474 F.2d 22 (8th Cir. 1973); *Blake v. Morford,* 563 F.2d 248 (6th Cir. 1977), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978).

588 (1875).[13] As the trial court's exclusion of evidence pertaining to the suspended license charge illustrated, whether Goodloe had violated a specific state statute was a crucial factual determination. In such a situation, an information which describes the offense in generic terms fails to adequately inform of the specific offense charged so as to allow preparation of a defense. *Russell v. United States,* 369 U.S. 749, 764–66, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Hess,* 124 U.S. 483, 487, 8 S.Ct. 571, 31 L.Ed. 516 (1888). Thus the information, while couched in the language of the statute, nevertheless failed to adequately describe the offense charged because it did not allege an essential substantive element. *See United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1882); *see also Dutiel v. State,* 135 Neb. 811, 284 N.W. 321 (1939).

If a defendant is actually notified of the charge, due process notice requirements may be met, even if the information is deficient. *See United States v. Camp,* 541 F.2d 737, 740 (8th Cir. 1976); *cf. United States v. Cartano,* 534 F.2d 788, 791 (8th Cir.). *cert. denied,* 429 U.S. 843, 97 S.Ct. 121, 50 L.Ed.2d 113 (1976). Goodloe was notified by complaint and arrest warrant of the prosecution's theory that he fled arrest for driving with a suspended license. He was prepared to defend on those grounds and therefore would not necessarily have been prejudiced if the trial court ruling had been limited to requiring commission of the violation for which his arrest was sought, driving with a suspended license, be proven as an essential element of the charge.[14]

However, even assuming Goodloe was not prejudiced by the information's lack of notice of an essential element of the offense, the deficiency of the information was compounded by modifications at trial, without notice or amendment of the information, in the elements of the offense. The lack of pretrial notice by information was aggravated by uncertainty during trial over what specific violation the prosecution would prove. The State urged, as late as the conference on instructions, that the jury could find from its proof that the underlying violation was either failing to stop at a stop sign, speeding, careless driving or willful and reckless driving, even though the first three violations were never mentioned in a complaint, arrest warrant, or information. Thus, in mid-trial the State not only changed the underlying violation it sought to prove, but then failed to specify what violation it was attempting to prove. The trial court recognized the problem of fair notice to Goodloe and only allowed the jury to find willful and reckless driving as the necessary prior violation element of the avoidance of arrest charge. The instruction to the jury could not, however, cure the fundamental unfairness of requiring Goodloe to defend without notice of specific elements of the offense charged.

The mid-trial shift, from proof of flight to avoid arrest for driving with a suspended license, for which Goodloe had prepared a defense, to proof of flight to avoid arrest for any one of four possible violations, illustrates the prejudice inherent in an information which fails to specify an essential element of the offense. The defendant is given insufficient notice to prepare a defense, he proceeds to trial with factual issues undefined, and the prosecution is left "free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Russell v. United States,* 369 U.S. at 768, 82 S.Ct. at 1049.

Due to a unique combination of circumstances, the State's action here is difficult to categorize—the trial court ruling meant the information was initially insufficient

---

13. The trial judge realized this deficiency when preparing the instructions, and advised the prosecutor that in the future the State should set out the particular violations underlying the main offense.

14. In fact, the trial court ruling was prompted by concern for fundamental fairness to Goodloe; the court reasoned that when a vehicle has not been stopped and the driver has not been informed he is subject to arrest, proof of a violation of state law was essential to make a case of flight in an attempt to avoid arrest.

for omission of an essential element; the absent element, of which Goodloe did have notice, was changed by events at trial, effectively amending the already deficient information or creating a variance; and, because the State did not specify the element it sought to prove until the end of trial, Goodloe had to prepare to meet, or without notice was unable to meet, proof of four possible statutory violations. Under these circumstances, we conclude Goodloe was not given fair and reasonable notice of the offense charged and the case against which he had to prepare a defense; the result was a fundamentally unfair trial that requires the conviction be set aside. *See Watson v. Jago,* 558 F.2d 330 (6th Cir. 1977).[15]

■ *Willful and Reckless Driving.* Remaining is Goodloe's attack on double enhancement of his penalty for willful and reckless driving—punishment as a felony upon finding the conviction was for a third or subsequent offense followed by imposition of the mandatory 10 year minimum sentence under the habitual criminal statute upon proof of two prior felonies.[16]

A statute that enhances punishment on the basis of subsequent convictions for the identical offense and an habitual criminal statute, which enhances the penalty on the basis of any prior felony convictions, have been repeatedly upheld against almost every conceivable constitutional challenge, including due process, double jeopardy, and cruel and unusual punishment. *See Spencer v. Texas,* 385 U.S. 554, 559–60, 87 S.Ct.

648, 17 L.Ed.2d 606 (1967); *Wessling v. Bennett,* 410 F.2d 205, 207 (8th Cir. 1969). The reasoning is that the statutes do not charge a separate and distinct crime so as to put a defendant again in jeopardy for the prior offenses, but bear only on permissible punishment for the latest offense. *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948); *Graham v. West Virginia,* 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912). Nor is penalty enhancement considered multiple punishment for one offense, but rather imposition of a heavier punishment for an offense aggravated by repetitious criminal conduct. *Gryger v. Burke; Graham v. West Virginia.*

Nonetheless, we have been unable to find any federal cases which consider challenges under the United States Constitution to stacking a specific subsequent offense penalty enhancement statute and a general habitual criminal statute upon one another in sentencing for a single offense.

Several state court decisions have involved use of a statute that enhances a misdemeanor to a felony upon repetition of the same offense and a general habitual criminal statute. Very few of these cases address the instant situation, however, in which the conduct being currently punished, the offense which "triggers" application of the habitual criminal statute, is a misdemeanor that has been enhanced to felony status only by virtue of its repetition.[17]

---

**15.** Goodloe exhausted state remedies by presenting the substance of his claim to the Nebraska courts. He brought to the attention of the trial court, through a motion to dismiss for insufficient evidence and objections to instructions, problems in definition of the elements of the offense and the resultant lack of notice of what underlying violation the State had sought to prove. Fundamental unfairness, due to confusion as to the elements of the crime and lack of notice, was raised in a due process attack on the vague language of the statute in briefs in both the Nebraska Supreme Court and this court.

**16.** We hold the evidence was sufficient to support the conviction of willful and reckless driving. We have reviewed the evidence under the standard set forth in *Jackson v. Virginia,* ——

U.S. ——, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), decided subsequent to the federal district court's opinion.

**17.** Some cases decide whether an "enhanced misdemeanor" is a felony to be used as a *prior felony* conviction to enhance the penalty for a current charge under an habitual criminal statute. Although it is stated as a general rule that offenses which are felonies only when those who perpetrate them have been previously convicted of crimes do not constitute "felonies" within the meaning of prior felonies that enhance penalties under habitual criminal statutes, annot., 19 A.L.R.2d 227, 232 (1951), state courts are evenly divided. Prohibiting use of enhanced misdemeanors as prior "felonies" are: *Stover v. Commonwealth,* 92 Va. 780, 22 S.E. 874 (1895); *State v. Brown,* 91 W.Va. 187,

The practice has been generally condemned on the basis of legislative intent.[18] In addition, several states have held that penalty enhancement provisions set forth for subsequent offenses of specific crimes must be used when applicable *instead* of sentencing under a general recidivist statute, which would imply that both statutes may not be used for double penalty enhancement in sentencing for one offense.[19] All the state court decisions invalidating double penalty enhancement employ canons of statutory construction such as: an habitual offender statute must be strictly construed, because it is penal; a specific statute (e. g., subsequent specific offense statute) controls over a more general one ( e. g., habitual criminal statute); and a subsequent offense statute based upon a specific crime cannot create a "true" felony, for purposes of an habitual offender statute, because it does not define an offense, but merely increases punishment upon a second or subsequent conviction of the same offense.

■ While the weight of authority appears to be against double penalty enhancement through application of both a specific

subsequent offense statute and an habitual criminal statute, the state court decisions mentioned above do *not* rest on federal constitutional grounds. Similarly, the issue of whether upon conviction of a misdemeanor, sentence could be imposed on a felony ·charge under an habitual criminal statute, has been held not cognizable in federal habeas corpus because it rests upon an interpretation of state law in *Glenn v. Pate,* 406 F.2d 68, 69 (7th Cir. 1969). Whether the Nebraska legislature intended a third or subsequent conviction of the misdemeanor of willful and reckless driving to be a "trigger" felony conviction for application of the habitual criminal sentencing statute was not raised in Goodloe's appeal to the Nebraska Supreme Court. Thus, while Goodloe has posed serious federal constitutional questions, under the circumstances we feel obligated to abstain from passing on these, as the Nebraska Supreme Court's interpretation of Nebraska law may render a decision unnecessary. We therefore require Goodloe to raise the issue of legislative intent in state court, through a petition for post-conviction relief, before a

112 S.E. 408 (1922). Also, the American Bar Association Special Committee on Minimum Standards for the Administration of Criminal Justice has disapproved enhancement of a felony term on the basis of prior misdemeanors, reasoning that misdemeanors by nature do not threaten the security of the public to the same extent as felonies. *ABA Standards Relating to Sentencing Alternatives and Procedures,* Commentary, § 3.3(f) at 169 (1968). Decisions upholding use of a misdemeanor made a felony through repetition as a prior felony conviction are: *People v. Wilson,* 161 Misc. 421, 293 N.Y.S. 178 (1936); *People v. Bradley,* 3 Cal. App.3d 273, 83 Cal.Rptr. 234 (1970); *McKee v. State,* 576 P.2d 302, 307 (Okl.Cr.1978). The rationale in all the cases is construction of the respective statutes and determination of legislative intent, through use of canons of construction and presumptions.

18. New York upholds in part such a practice against constitutional challenge, *see People v. Seager,* 11 Misc.2d 261, 171 N.Y.S.2d 554 (1958); *People v. Vernon,* 83 Misc.2d 1025, 373 N.Y.S.2d 314 (1975) (prior felonies elevated "trigger" misdemeanors to felonies), but does not allow sentencing under the general penal code second felony offender statute when the "trigger" offense is driving while intoxicated, even though it is defined in the *traffic and*

*vehicular laws* as a felony when a prior exists, because of statutory language indicating only offenses defined as felonies in the *penal code* can be "trigger" offenses. *People v. Speranza,* 80 Misc.2d 798, 364 N.Y.S.2d 83 (1974); *People v. Tyler,* 46 App.Div.2d 997, 361 N.Y.S.2d 794 (1974). California has disapproved, on the basis of the specificity of statutory language, use of a misdemeanor made a felony by virtue of the increased punishment imposed on the basis of a prior felony conviction, as a "trigger" felony in application of an habitual offender statute. *Ex Parte Boatwright,* 216 Cal. 677, 15 P.2d 755 (1932).

19. *See State v. Heyward,* 90 N.M. 780, 568 P.2d 616 (1977) (use of habitual criminal statute to increase sentence on conviction already enhanced impermissible only if enhancement statutes conflict); *Lloyd v. State,* 139 Ga.App. 625, 229 S.E.2d 106 (1976) (specific second drug offender sentencing provision controls); *State v. Loudermilk,* 221 Kan. 157, 557 P.2d 1229, 1232–33 (1976) (specific statute has its own self-contained habitual criminal provision); *Willeford v. State,* 454 S.W.2d 745 (Tex.Cr. 1970); *Broome v. State,* 440 P.2d 761 (Okl.Cr. 1968).

federal court passes upon the constitutional questions he raises here.[20]

We vacate that portion of the district court decree relating to the constitutionality of the stacking of the two penalty enhancement statutes. We hold that until the Nebraska state courts construe the legislative intent of the two provisions, passing upon the constitutional questions is premature.

We do hold, however, that Goodloe's avoidance of arrest conviction was obtained in violation of the requirements of due process of law and is void. As the conviction and concurrent sentence for willful and reckless driving remain, the district court must retain jurisdiction. We therefore instruct the district court to retain jurisdiction pending the outcome of Goodloe's petition to the Nebraska state courts. The state court proceedings, assuming they are completed within a reasonable time, should be certified by the defendant to the federal district court, which may then pass on the remaining constitutional issues, if necessary, in this habeas proceeding.

THE CAUSE IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

**20.** Resolution of the legislative intent issue is not clear-cut and it does not appear futile to require Goodloe to raise it in state court. Both the definition of the offense of willful and reckless driving and the specific penalty provision for a third offense are found in the section of the Nebraska code entitled Traffic—Rules of the Road, and both were enacted after the more general habitual criminal act (1921), which is located in the section of the code entitled Criminal Procedure. There is authority that willful and reckless driving is a crime, despite statutory language indicating it is merely a traffic infraction or civil offense, but only for purposes of procedural protections. *State v. Knoles,* 199 Neb. 211, 213, 256 N.W.2d 873, 874 (1977). Although unlabeled, a third offense was a felony in 1975 by virtue of the criminal code's former definition of felony, section 29–102 (repealed 1978). *Id.* On the other hand, only one offense is defined by statute, willful and reckless driving, with provision for increased penalties upon repetition. *Cf. State v. Steemer,* 175 Neb. 342, 121 N.W.2d 813 (1963) (construing section 60–430.01, operating a motor vehicle without a license). Thus when convicted of willful and reckless driving, Goodloe may not have been "convicted of a felony" as the habitual criminal act requires, but merely sentenced as a felon upon conviction of a misdemeanor. In addition, under the revised Nebraska Criminal Code, effective in 1979, §§ 28–101 to 1335 (1978 Supp.), sentences for each type and class of offense are specified and each new offense is to be labeled by the legislature. Those offenses defined outside the penal code are punishable as provided in the statute defining them. Neb. Rev.Stat. § 28–107(1). Although application of the habitual criminal act to felonies is unaffected, there is no indication at the present time whether willful and reckless driving (third offense), is a felony or misdemeanor for purposes of the act. Nebraska requires that specific statutes govern more general ones, at least within the criminal code, section 29–105 (1964), that a penal statute be applied only to those clearly within its terms, section 29–106 (1964); *State v. Dailey,* 76 Neb. 770, 107 N.W. 1094 (1906), and that common understanding of language be used to define terms, section 29–109 (1964).