FILED

12/12/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0383

DA 21-0383

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 238

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TYLOR THOMAS BUTTOLPH,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC-19-751
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Haley Connell Jackson, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

            Joshua A. Racki, Cascade County Attorney, Kory Larsen, Deputy
County Attorney, Great Falls, Montana

                    Submitted on Briefs:  July 12, 2023

                           Decided:  December 12, 2023

Filed:

_____
                      Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Tylor Buttolph (Buttolph) appeals his conviction of stalking entered in the Eighth Judicial District Court, Cascade County. We reverse.

¶2 We restate the issue on appeal as follows:

*Was Buttolph's constitutional right to due process violated when the State used an act not charged in the information to prove "course of conduct" for the offense of stalking?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Buttolph and his former girlfriend, K.D., have a young son, T.B., born in 2015. Buttolph and K.D. have a turbulent relationship and on May 14, 2018, K.D. obtained an order of protection against Buttolph. Although Buttolph was not present for the hearing, the Court granted K.D.'s petition and ordered that Buttolph have no contact with his son, K.D., and K.D.'s other children.[1] The Court entered the order to be in place for ten years, from May 14, 2018, until its expiration on May 14, 2028.

---

[1] The record does not contain the affidavit filed by K.D. in support of her petition for a protective order. However, based on an order issued April 15, 2019, by then Standing Master David J. Grubich, Buttolph was served with the Temporary Order of Protection (TOP) while detained but no provisions were made for his transport to the subsequent show cause hearing. When Buttolph did not appear after being served, the Court granted K.D.'s request for a ten-year order of protection. Buttolph thereafter filed a motion to terminate the TOP, asking for a hearing so that he could be heard on the merits of K.D.'s petition. Buttolph maintained he was incarcerated and had not been transported for the earlier hearing. The Court set a hearing for May 14, 2019, and, although the Court's order was served on Buttolph at the detention facility, the Court admonished Buttolph to provide notice of his address and whether he needed transportation arrangements to be made. Buttolph's parents appeared for the hearing and advised the Court that Buttolph was incarcerated and had not been transported. Although the Court had served its prior orders on Buttolph while he was detained, the Court ultimately determined that Buttolph had not provided notice to the Court that he was incarcerated or that he needed arrangements to be made for transport. The Court held that it "is not tasked with investigating the living status of each and every litigant that appears before it" and that "[t]his Court is not privy to every change in Buttolph's status of incarceration." Although there was never a hearing on the merits of K.D.'s

¶4      More than 17 months after the order was issued, Buttolph was in Smith's grocery store in Great Falls when K.D. and her daughter were there. Buttolph indicated he was in the store to purchase a bottled water while he and his father waited for Buttolph's mother to get off work from the Hampton Inn across the street. K.D. represented that Buttolph called to her from the other end of a food aisle and that, upon seeing Buttolph, she feared for her safety and that of her daughter. K.D. reported the incident to police and Buttolph was arrested at his father's home.

¶5      While in jail, Buttolph wrote a letter to T.B. on October 20, 2019. In the letter Buttolph wished T.B. a happy birthday, told T.B. he loved him, asked whether K.D. had given T.B. the Dream Catcher he had sent, and said he would draw some pictures for T.B. Thereafter, the State charged Buttolph with three counts of felony stalking. Two counts were for contact with K.D. and her daughter, (A.P.), at Smith's grocery store, and one count was for the letter Buttolph wrote to T.B. on October 20, 2019.

¶6      Buttolph did not post bail and remained in the Cascade County Regional Detention Center. Over the next several months, Buttolph wrote T.B. four more letters. In a letter dated December 2019, Buttolph wrote a Christmas poem, entitled "Daddy's Little Man," describing his love for T.B. and revisiting several milestone moments in their lives. The second letter, written January 1, 2020, was a New Year's letter that told T.B. that he wanted him to have the best life this world has to offer and that he thinks about him every day. Buttolph wrote that he missed T.B., described how much he loved him, and reminded T.B.

_____

petition, the Court held the order of protection, which included Buttolph's son, T.B., would remain in effect for 10 years.

3

that he had a strong family that also supported and loved him. In a third letter written January 13, 2020, Buttolph again reminded T.B. of how much he loved him, recounted special events they shared, and told T.B. he made a chess board for them. Finally, in a fourth letter written March 29, 2020, Buttolph wrote T.B. reminding him how much he loved T.B. and asking T.B. about his life.

¶7    Buttolph also wrote a letter to K.D., postmarked April 6, 2020. In his letter, Buttolph expressed concern that COVID might affect her health and the children's health, that T.B. deserved for K.D. and Buttolph to be better, and Buttolph apologized to K.D. for past actions. K.D. turned all the letters over to police without opening them.

¶8    In the Second Amended Information, which was the information the parties proceeded on at trial, the State charged Buttolph with eight counts of stalking: Count I charged stalking of K.D. at Smith's; Count II charged stalking of A.P. at Smith's;[2] Count III charged stalking of T.B. arising from Buttolph's October 29, 2019 letter to T.B.; Count IV charged stalking of T.B. arising from Buttolph's December 2019 letter to T.B.; Count V charged stalking of T.B. arising from Buttolph's January 1, 2020 letter to T.B.; Count VI charged stalking of T.B. arising from Buttolph's January 13, 2020 letter to T.B.; Count VII charged stalking of T.B. arising from Buttolph's February 11, 2020 letter to T.B.; and Count VIII charged stalking of K.D. arising from Buttolph's March 29, 2020 letter to K.D. The charging document thus specified that the eight counts of stalking occurred between

---

[2] At the close of evidence, the State agreed to drop Count II pertaining to K.D.'s daughter, A.P.

October 17, 2019, and April 6, 2020.[3] Although K.D. claimed she had received threatening letters from Buttolph prior to October 17, 2019, and even before the order of protection, the State did not include these letters in the charging document. Importantly, in none of the counts was there any mention of a second act which would satisfy the "course of conduct" element of stalking.

¶9 Prior to trial Buttolph filed a motion to exclude prior bad acts evidence. The State did not object and the Court granted the motion preventing the State from introducing evidence of prior bad acts not charged.

¶10 On the morning of trial, prior to voir dire, the State noted that the charged offenses "require a course of conduct which is two or more things, so we have to show some activity that occurred prior to in order to prove the course of conduct element." The State then requested that it be allowed to discuss alleged acts that had occurred prior to the charged offenses. The State argued that the testimony was admissible as transaction evidence to establish two elements of the offense of stalking: (1) that K.D.'s fear was reasonable, and (2) that there was a "course of conduct" involving two or more acts. Buttolph objected that the evidence involved uncharged conduct and was too remote to the charged conduct in the underlying case. Buttolph argued the Court needed to narrow the scope of the trial to the timeframe in which the State alleged the charged conduct occurred. Buttolph argued the request was untimely, inappropriate, and likely to confuse the jury.

---

[3] The State included two different end dates for the alleged offenses, March 29, 2020, and April 6, 2020. The prosecutor later clarified that the correct date was April 6, 2020.

¶11 The District Court heard arguments from the State and Buttolph during a pretrial hearing to consider whether the State could introduce evidence of prior conduct during trial. The Court ruled that the evidence could be admitted to help "the jury understand the relationship between the parties" and to establish the reasonableness of K.D.'s fear. However, the Court did not authorize the State to use prior uncharged conduct to prove one of the acts constituting "course of conduct" and the Court clarified that "the State must not introduce any evidence of any prior convictions or criminal investigations." The Court stated it would read a cautionary 404(b) instruction at trial when the State introduced the evidence.

¶12 At trial, K.D. related the events surrounding her obtaining the order of protection. She testified she was concerned for her family's safety based on Buttolph's history of physical, mental, and emotional abuse. The Court immediately gave the following cautionary instruction:

> [T]he State is going to offer evidence that the Defendant at another time engaged in other acts. The evidence is not admitted to prove the character of the Defendant or to show he acted in conformity therewith. The only purpose of admitting that evidence is to show proof of motive. You may not use that evidence for any other purpose. The Defendant is not being tried for any other acts. He may not be convicted for any other offense, other than those charged in the case. For the jury to convict the Defendant of any other offense than charged in the case may result in unjust double punishment for the Defendant.

¶13 During closing arguments, the State referred to the letters written prior to the charged conduct and issuance of the protection order. The State told the jury that Buttolph engaged in a "course of conduct," an element of the stalking statute, and that "course of

6

conduct" requires two or more acts. The State argued to the jury "[t]here's acts prior to the restraining order and acts after the restraining order. Each of those acts gives you the second act. . . . But, there are two or more acts. There were acts that occurred prior to the restraining order that result in [K.D.] getting it, and there are acts after that time."

¶14    The Court instructed the jury on the elements of stalking, including the definition of "course of conduct":

> To convict the Defendant of stalking, the State must prove the following elements: One, that the Defendant engaged in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person to [f]ear for that person's own safety or the safety of a third person.
>
> .   .   .
>
> Course of conduct means two or more acts, including but not limited to acts in which the offender directly or indirectly, by any action, method, communication, or physical or electronic devices or means, follows, monitors, observes, surveils, threatens, harasses, or intimidates a person or interferes with a person's property.

The verdict form listed one act for each count. During deliberations, the jury submitted a question related to "course of conduct" and asked: "Does the 'course of conduct' necessitate 2 or more acts under the same count or can they be across multiple counts?" The parties asked the Court to instruct the jury to rely on the evidence and the instructions given. The jury acquitted Buttolph of six of the remaining seven counts; convicting Buttolph only on count eight for writing a letter to K.D.

¶15    Buttolph appeals.

**STANDARD OF REVIEW**

¶16 We exercise plenary review of constitutional questions, including whether an accused's constitutional right to due process was violated. *State v. Pyette*, 2007 MT 119, ¶ 11, 337 Mont. 265, 159 P.3d 232. "One of the Montana Legislature's purposes for enacting criminal statutes is 'to give fair warning of the nature of the conduct declared to constitute an offense.'" *State v. Abe*, 1998 MT 206, ¶ 30, 290 Mont. 393, 965 P.2d 882, (citing *State v. Tower*, 267 Mont. 63, 66, 881 P.2d 1317, 1319). When determining if a claim has been properly preserved for appeal, this Court evaluates whether the issue was presented to the trial court "because it is unfair to fault the trial court on an issue it was never given an opportunity to consider." *State v. Montgomery*, 2010 MT 193, ¶ 11, 357 Mont. 348, 239 P.3d 929.

**DISCUSSION**

¶17 We first note that Buttolph's claim was properly preserved for appeal. The State acknowledges on appeal that the District Court ruled on the admissibility of the prior conduct. However, it argues that the District Court "was never 'directly faced with the question' about notice and appraisal issues pertaining to the State's charging documents, nor did it give a 'definitive ruling' on the matter." Therefore, the State asserts that Buttolph's failure to object during closing argument bars raising the claim on appeal. Buttolph, relying on *State v. Byrne*, 2021 MT 238, ¶ 20, 405 Mont. 352, 495 P.3d 440, asserts that objecting to an issue pretrial preserves the issue for appeal and does not require a subsequent objection at trial. Based on the record and the arguments of counsel, we

8

conclude that Buttolph preserved his objection to the State's use of pre-2018 order of protection conduct. His objection was to *any* use of the evidence for *any* purpose. Buttolph asked the Court to limit the scope of the trial to the timeframe of what the State had alleged and charged. Buttolph preserved his objection to the use of uncharged, pre-2018 conduct which would expand the scope of the timeframe charged in the Second Amended Information. The objection was the basis of a pretrial hearing wherein the District Court considered the State's use of the prior uncharged conduct. The District Court ruled the evidence was admissible only for the limited purpose of establishing K.D.'s reasonable apprehension. Buttolph was not required to make a contemporaneous objection for each alleged violation. We, accordingly, will address the merits of Buttolph's claim.

¶18    Buttolph was charged by information with eight counts of felony stalking allegedly occurring between October 17, 2019, and April 6, 2020. For each count of stalking, the State listed only one act of misconduct. The stalking statute, § 45-5-220(1)(a), MCA, provides, however, that "[a] person commits the offense of stalking if the person purposely or knowingly engages in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person to: (a) fear for the person's own safety or the safety of a third person. . . ." "Course of conduct" is defined within the stalking statute. Section 45-5-220(2)(a), MCA, provides: "'Course of conduct' means *two or more acts*, including but not limited to acts in which the offender directly or indirectly, by any action, method, communication, or physical or electronic devices or

9

means, follows, monitors, observes, surveils, threatens, harasses, or intimidates a person or interferes with a person's property." (Emphasis added).

¶19     The issue before this Court is whether Buttolph's conviction for felony stalking violated his constitutional right to be informed of the nature and cause of the accusation when his charging document omitted any reference to a second act which was a required element of the offense of stalking. The Sixth Amendment to the United States Constitution provides that an accused has the right "to be informed of the nature and cause of the accusation. . . ." The notice provision of the Sixth Amendment is incorporated within the Due Process Clause of the Fourteenth Amendment and is therefore fully applicable to the states. The Due Process Clause of the Fourteenth Amendment establishes that "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 517 (1948). The right to notice is basic and a clearly established due process right of an accused in a criminal proceeding. It is "generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907 (1974). However, "it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming

10

under the general description, with which he is charged." *Hamling*, 418 U.S. at 117-18, 94 S. Ct. at 2908.

¶20    Montana's Constitution similarly provides for an accused's right to be informed of the nature and the cause of the accusation. Article II, Section 24 provides that the accused shall have the right "to demand the nature and cause of the accusation. . . ." A person cannot be convicted of an offense not charged against him by information, whether or not there was evidence at his trial to show that he committed the offense. "Long ago, this Court held that an information must contain 'a statement of the facts constituting the offense charged in ordinary and concise language in such manner as to enable a person of common understanding to know what was intended.'" *State v. Kern*, 2003 MT 77, ¶ 31, 315 Mont. 22, 67 P.3d 272 (quoting *State v. Paine*, 61 Mont. 270, 273, 202 P. 205, 205 (1921)). "[A]n information is sufficient if it properly charges an offense in the language of the statute defining the offense charged." *Kern*, ¶ 31.

¶21    An accused is entitled to have an information reasonably indicate the exact offense to enable the accused to make intelligent preparation of his defense. The form of the charge is the responsibility of the State and it is not unjust to hold the prosecuting authority accountable for substantive shortcomings in its pleadings. To amorph this requirement to a subjective consideration of whether a defendant had an understanding of a defective charge or otherwise had notice of particular facts would place this fundamental constitutional purpose in danger. Here, the State charged an offense requiring that two or more acts of misconduct be set forth as a necessary element of the crime. It failed to do

11

so. For each count in Buttolph's charging document, only one act was charged. In spite of this, the State was able to present at trial and during argument evidence of second acts of misconduct not set forth in the charging documents but necessary elements of the offense of stalking. This was a fundamental due process violation of the highest order; an accused cannot be convicted of a crime for which he was not charged. The State did not allege pre-2018 protection order acts as part of the facts constituting the elements of stalking. It could not make up for its deficiency by presenting evidence under an unrelated theory of admissibility and then arguing to the jury that the evidence of the second act was before it. The State's realization of its blunder on the day of trial illustrates the prejudice inherent in an information which fails to specify the essential elements of the offense. The defendant is given insufficient notice to prepare a defense, he proceeds to trial with factual issues undefined, and the prosecution is left "free to roam at large to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Goodloe v. Parratt*, 605 F.2d 1041, 1046 (8th Cir. 1979).

¶22    Here, there was no "statement of facts constituting the offense charged" because the charging document was silent as to the second act constituting the course of conduct element of the offense. The language of the statute required that the charging documents set forth at least two acts of misconduct. The State cannot shift its theory of criminality on the day of trial without violating Buttolph's fundamental right to due process.

12

**CONCLUSION**

¶23    Buttolph's constitutional right to due process was violated when the State used an act not charged in the information to prove "course of conduct" for the offense of stalking.

¶24    Reversed.

/S/ LAURIE McKINNON

We Concur:

/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ JIM RICE