**UNITED STATES of America, Appellee,**

v.

**Roosevelt Theodore BECTON, Jr., Appellant.**

**No. 84–1311.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1984.

Decided Dec. 27, 1984.

Rehearing and Rehearing En Banc Denied Feb. 11, 1985.

---

Thomas E. Dittmeier, U.S. Atty., Michael W. Reap, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Arthur S. Margulis, Thomas J. Cotter, Margulis & Grant, P.C., St. Louis, Mo., for appellant.

Before BRIGHT, JOHN R. GIBSON and FAGG, Circuit Judges.

BRIGHT, Circuit Judge.

Roosevelt Theodore Becton stands convicted of conducting a continuing criminal enterprise [1] (Count I), two Travel Act [2] violations (Counts III and IV), and possession of cocaine [3] (Count VI, a misdemeanor). The district court [4] sentenced him to twenty-five years' imprisonment (without parole) on Count I and fined him $25,000. In addition, the court imposed lesser concurrent prison terms on the other counts,[5] plus

---

1. 21 U.S.C. § 848 (1982).

2. 18 U.S.C. § 1952 (1982).

3. 21 U.S.C. § 844 (1982).

4. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

5. Five years on Count III, concurrent to Count I. Five years on Count IV, concurrent to Count I, but consecutive to Count III. One year on

fines totalling an additional $25,000. Becton appeals. We affirm the conviction on Counts I, III, and VI and reverse on Count IV, the second Travel Act violation.

## I. BACKGROUND.

Count I of the indictment, alleging participation in a continuing criminal enterprise (CCE), constitutes the most serious charge against Becton. The language of the indictment essentially follows the statute, the government alleging that between January 1, 1977, and August 18, 1983, Becton knowingly and willfully engaged in a continuing criminal enterprise by violating felony provisions of the Controlled Substances Act,[6] in concert with at least five other persons over whom Becton occupied a position of organizer, supervisor, or manager, and that he obtained substantial income and resources from these activities. Count I does not identify the persons Becton allegedly supervised, nor does it specify the underlying violations of the Controlled Substances Act. Other counts in the indictment, however, do allege numerous felony violations of the Controlled Substances Act.

The violations alleged in Counts II and V (conspiracy and possession of eight and one-half tons of marijuana) qualify as the sort of felonies that could establish a criminal enterprise.[7] In addition, Count II alleges a number of overt acts which amount to felonious conduct in furtherance of the conspiracy, including the procurement of large quantities of marijuana in Florida and Tennessee, distributing large amounts of marijuana in Missouri, and involvement with smuggling great quantities of marijuana into Texas.

The government presented evidence to support these charges, and to prove that Becton supervised at least five other persons in the criminal enterprise. It would

serve no purpose to review all that evidence; we will only recount a few major incidents.[8] Edward Hindelang, a major marijuana importer, testified that his organization sold between $3 and $4.5 million worth of marijuana to Becton between 1976 and 1980. Steven Helmich testified that he once assisted Becton in weighing a truckload of marijuana, which he subsequently delivered to three different locations in St. Louis at Becton's direction. Helmich also testified that Becton sold $1 million worth of marijuana to Tony Olivastro between 1977 and 1979. Nathaniel Yancy testified that he purchased large quantities of marijuana from Becton, citing one purchase of 2,000 pounds. He also testified that he once delivered 4,000 pounds of marijuana to a buyer at Becton's direction. Becton arranged for the distribution of 7,000 pounds of marijuana from Fort Lauderdale, Florida in January 1980. Finally, the testimony of several witnesses established that Becton owned one-third of an 18,000 pound shipment of marijuana seized at the CDY warehouse in St. Louis County, Missouri in February 1980.

In addition to the possession and sale of marijuana, Becton indirectly and directly participated in smuggling-related activities. In August or September of 1979, the Hindelang organization smuggled 228,000 pounds of marijuana into Pascagoula, Mississippi, by ship. Two of Becton's relatives helped unload the vessel, and Becton received $80,000 for their services. In December of 1979, Hindelang attempted to smuggle another shipload of marijuana into Galveston-Houston, Texas. Becton arranged to have four of his relatives assist in unloading the ship, for which he would receive $20,000 per person, per day. However, state and federal agents detected the operation and arrested the participants, whereupon Becton arranged for Hindelang

---

Count VI, concurrent to Count I but consecutive to Counts III and IV.

**6.** 21 U.S.C. §§ 801–966 (1982).

**7.** The district court instructed the jury that the crimes in Counts II and V could be considered as part of the series of felonies underlying the CCE charge. The government withdrew these

charges before the case went to the jury because they were considered lesser included offenses in the CCE charge.

**8.** The facts regarding Count VI (possession of cocaine) are not stated because Becton does not contest his conviction on that count.

to provide his relatives with money for bail and attorneys' fees.

Turning to the Travel Act convictions, Counts III and IV of the indictment alleged that, on two occasions in January 1980, Becton travelled to Fort Lauderdale, Florida with the intent to promote an unlawful activity, and that while in Florida he performed or attempted to perform some act of promoting that activity. In support of these charges, the government proved that Becton procured the use of a house in Fort Lauderdale during January 1980. He travelled from Missouri to Florida twice that month, accompanied by Nathaniel Yancy, for the stated purpose of obtaining marijuana. During the first trip, Yancy and others distributed 7,000 pounds of marijuana from the house in Fort Lauderdale to a number of individual buyers, then Becton and Yancy returned to St. Louis. Becton did not manage to acquire any marijuana during the second trip. He informed Yancy that they would not be driving any marijuana back to St. Louis; instead, it would be delivered to St. Louis by a supplier.

After a two-week trial, the jury found Becton guilty on the CCE, Travel Act, and possession of cocaine charges. The district court denied Becton's motion for acquittal and entered a judgment of conviction on all counts.

Although appellant raises nine separate allegations of error, his arguments may be summarized as follows:

1. Insufficiency of the evidence to support each conviction, except the cocaine misdemeanor;

2. Errors in the admission of evidence relating to coconspirators' statements, the admission of other crimes evidence, the admission of testimonial summarization of evidence, and in permitting improper use of grand jury testimony;

3. Defectiveness of the indictment in Count I (CCE) in that the indictment failed to specify the requisite three or more predicate offenses;

4. Preindictment delay; and

5. Unconstitutionality of sentence under Count I or, alternatively, disproportionality of sentence.

We consider first those issues relating to Count I.

## II. SUFFICIENCY OF THE EVIDENCE.

### A. The Continuing Criminal Enterprise.

We recently had occasion to discuss the evidence necessary to support a CCE conviction. In *United States v. Samuelson*, 697 F.2d 255 (8th Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 1314, 79 L.Ed.2d 711 (1984), we stated:

> A conviction for violation of [the CCE statute] requires the establishment of the following elements: the commission of a continuing series of violations of federal narcotics laws, in concert with five or more persons, by a person occupying a management or organizing position, who receives substantial income therefrom.

*Id.* at 259. We noted that other courts have defined a "series of violations" as three or more violations. *Id.* (citing *United States v. Valenzuela*, 596 F.2d 1361, 1364–65 (9th Cir.), *cert. denied*, 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979)).

Becton argues that the evidence in this case does not establish that he organized, managed, or supervised five or more persons. He does not contest the proof concerning other elements of the CCE conviction, and we are satisfied that those elements have been proved by sufficient evidence. The facts set forth above establish that Becton directed the activities of Helmich, Yancy, and his relatives who unloaded marijuana from ships in Louisiana and Texas. In addition, evidence indicated that Becton coordinated a meeting of at least four other drug dealers at his condominium in Memphis, Tennessee, for the purpose of obtaining marijuana from an airplane scheduled to land in Arkansas.

 We note that the supervisory relationship specified in the CCE statute need

not have existed with regard to the five persons at the same time, that those five persons need not have acted in concert, and that the same type of supervision need not have been exercised over each person. Furthermore, the government need not prove that the supervisor had personal contact with each person. *United States v. Dickey*, 736 F.2d 571, 587 (10th Cir.1984); *United States v. Phillips*, 664 F.2d 971, 1013 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Bolts*, 558 F.2d 316, 320 (5th Cir.), *cert. denied*, 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977), 439 U.S. 898, 99 S.Ct. 262, 58 L.Ed.2d 246 (1978). In addition, it is irrelevant that other persons, such as Hindelang, may have exercised supervision superior to Becton's. A defendant need not be the dominant organizer or manager of a criminal enterprise; the statute requires only that he occupy some managerial position. *United States v. Oberski*, 734 F.2d 1030, 1032 (5th Cir.1984); *United States v. Losada*, 674 F.2d 167, 174 (2d Cir.), *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). Viewing the evidence in the light of the above stated principles, we are satisfied that the government presented sufficient evidence to prove that Becton organized, supervised, or managed at least five other persons in this criminal enterprise. Accordingly, we reject Becton's challenge to the sufficiency of the government's evidence on the CCE charge.

### B. Travel Act Violations.

The Travel Act, 18 U.S.C. § 1952(a)(1982), provides as follows:

Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

The jury found that Becton violated this statute on two occasions, relating to his two trips to Fort Lauderdale in January 1980. He argues that the evidence does not support the verdict because the government failed to introduce direct evidence that he committed or attempted to commit some particular act in furtherance of the unlawful activity after he arrived in Florida.

■ With regard to the first trip in January 1980, the evidence shows that Becton procured a house in Fort Lauderdale and directed Nathaniel Yancy to accompany him from Missouri to Florida for the stated purpose of acquiring marijuana. During Becton's stay in Florida, Yancy and others distributed over 7,000 pounds of marijuana from the house in Fort Lauderdale. We must consider this evidence in the light most favorable to the verdict, accepting all reasonable inferences which tend to support that verdict. *United States v. Wilkerson*, 691 F.2d 425, 427 (8th Cir.1982); *United States v. Taylor*, 599 F.2d 832, 837–38 (8th Cir.1979). We conclude that the evidence adequately supported the jury's verdict as to Count III.

■ Turning to the second Travel Act violation (Count IV), we observe that the evidence differs in one significant respect: neither Becton nor anyone in his entourage actually acquired any marijuana during the second trip to Florida in January of 1980. The record only shows that Becton travelled to Florida with the *intent* to acquire marijuana. Intent alone does not satisfy the requirements of the Travel Act. We agree with Becton that the government failed to prove that he performed or attempted to perform some act in furtherance of his illegal activity after his arrival in Florida. Accordingly, we vacate Count IV of the conviction and remand the case to

the trial court for an appropriate adjustment of the sentence.

## III. EVIDENTIARY MATTERS.

### A. Coconspirator's Statements.

■ The trial court allowed government witnesses to testify regarding out-of-court statements by Freddie Fitzgerald and Tony Olivastro. The court ruled that the statements were not hearsay under Fed.R.Evid. 801(d)(2)(E) (the coconspirator exception). Becton argues that the court should have excluded both statements because neither came within the stated exception, and because their admission violated his rights under the confrontation clause of the sixth amendment.

The government offered the statements in question to prove that Becton owned the marijuana referred to in Count V of the indictment (possession with intent to distribute). These statements are not the only proof of record concerning Becton's ownership. Becton told Yancy that he owned one-third of this marijuana, and Yancy testified that he saw Becton visit the warehouse containing the marijuana at midnight on February 6, 1980. Becton stayed for one hour, then left with one pound of marijuana. In addition to Yancy's testimony, Ralph Judge, an inmate at the county jail during the period of Becton's incarceration there, testified that he overheard Becton say he had been arrested because he had several tons of marijuana in a warehouse. We conclude that this evidence established that Becton possessed the marijuana covered by Count V, rendering any error in admitting the statements of Olivastro and Fitzgerald harmless beyond a reasonable doubt. *See United States v. Massa*, 740 F.2d 629, 640–41 (8th Cir.1984).

Furthermore, as related in note 7, *supra*, the government withdrew Count V before the case went to the jury, so the possession charge only has significance as one of the felonies underlying Becton's CCE conviction. The CCE conviction could be affirmed in this case without reference to the Count V possession charge, because the record contains sufficient evidence of other drug-related felonies to establish the series of violations required by the CCE statute. Accordingly, the admission of the Fitzgerald and Olivastro statements did not constitute reversible error.

### B. Other Evidentiary Objections.

We have reviewed Becton's other arguments regarding the admission of "other crimes" evidence, grand jury testimony, and summarization evidence, and find them to be without substantial merit.

## IV. DEFECTIVENESS OF THE INDICTMENT.

■ Count I of the indictment did not list the specific violations of federal narcotics law constituting the alleged continuing criminal enterprise. Becton contends that this causes the indictment to be impermissibly vague. As a general rule, due process requires that the indictment give a defendant notice of each element of the charge against him so that he can prepare an adequate defense. However, if the defendant has actual notice of the charges, due process may be satisfied despite an inadequate indictment. *Goodloe v. Parratt*, 605 F.2d 1041, 1045–46 (8th Cir.1979). In this case, other counts of the indictment gave Becton notice of the underlying felonies. Counts II and V specifically charged two narcotics law violations and the "overt acts" section of Count II listed allegations comprising additional violations. Significantly, Becton fails to allege that any of the felonious activities proved at trial took him by surprise. Furthermore, he did not raise this objection to the indictment before or during trial, and on appeal he raised it for the first time in his reply brief. These facts lead us to conclude that the government's failure to specify underlying felonies in Count I of the indictment did not prejudice Becton in any way.

Becton also argues that the underlying felonies must always be listed in a CCE indictment to protect defendants from the possibility of double jeopardy. If the felonies are not specified, a defendant could be

acquitted on the CCE charge, then tried again for the substantive felonies, because he would have no way to show that those felonies were tried as predicate offenses at his first trial. We do not consider this a realistic possibility. A CCE charge would seem to include any and all federal narcotics violations committed during the time period specified in the charge. Thus, an acquittal on the CCE charge would in all likelihood bar further prosecution for any acts that would constitute underlying violations, and a CCE conviction would include all underlying felonies committed during the time period covered by the indictment.

We do not, by this opinion, necessarily approve of the government's handling of the indictment in this case. We think it would be far preferable to list the felonies comprising the criminal enterprise in the CCE count of an indictment, thereby eliminating the potential problems suggested by Becton. However, we conclude on the facts in this case, that Becton received adequate notice of the charges against him and had an opportunity to present an adequate defense.

 In a related vein, Becton contends that the instructions to the jury were inadequate because they did not specify the alleged felonies underlying the CCE charge. The government in this case initially offered an instruction that did not specify the underlying felonies. Becton objected on the grounds of vagueness, and the court ordered the government to submit a more specific instruction. Government attorneys met with Becton's counsel, but the parties could not agree on a more specific instruction. The court then gave the government's original instruction to the jury, without objection by Becton. Under these circumstances, we conclude that Becton has waived his objection to the jury instruction. Moreover, the instructions adequately defined the felonies that can underlie a CCE charge.

## V. PREINDICTMENT DELAY.

 The government filed its first indictment against Becton on March 31, 1983, over three years after the raid on the CDY warehouse. Becton claims that this delay prejudiced him by depriving him of the opportunity to obtain an independent analysis of marijuana seized in Louisiana, Texas, and Missouri. Numerous government witnesses, including expert chemists, testified that the substance seized in each instance was marijuana. All of these witnesses were subject to cross-examination. Furthermore, the government retained samples of the marijuana from Texas and Missouri, which were available for independent analysis. Under these circumstances, we see no possibility that Becton experienced prejudice because of the delay. In the absence of prejudice, we will not reverse on the grounds of preindictment delay. *United States v. Rogers*, 639 F.2d 438, 440–41 (8th Cir.1981); *see United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1976).

## VI. CONSTITUTIONAL DEFECTS IN THE CCE STATUTE.

 Becton contends that the words "organizer, supervisor, or manager" as used in the CCE statute are impermissibly vague. This challenge has already been rejected, in this and other circuits. *United States v. Losada*, 674 F.2d 167, 174–75 n. 5 (2d Cir.) *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982); *United States v. Valenzuela*, 596 F.2d 1361, 1366 (9th Cir.1979), *cert. denied*, 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1980); *United States v. Kirk*, 534 F.2d 1262, 1277–78 (8th Cir.1976). Becton further argues that the statute denies him due process because its prohibition of parole or probation deprives the sentencing judge of essential discretion. This challenge has also been consistently rejected. *See United States v. Phillips*, 664 F.2d 971, 1042–43 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982); *United States v. Sperling*, 560 F.2d 1050, 1057 (2d Cir. 1977).

With regard to Becton's sentence, however, we observe that our vacation of one

**258**

of the Travel Act convictions may be a factor for the district court to take into account should the defendant seek reconsideration of the sentence under Fed.R. Crim.P. 35.

## VII. CONCLUSION.

We have carefully reviewed the record in this case and conclude that Becton's second Travel Act conviction, under Count IV of the indictment, must be vacated. We affirm the judgment of the district court in all other respects.

Affirmed except for Count IV which is reversed and the sentence on that count is set aside.