**UNITED STATES of America, Appellee,**

v.

**Fleet Wallace MAULL, Appellant.**

No. 85–2399.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 8, 1986.

Decided Dec. 2, 1986.

Lawrence Fleming, St. Louis, Mo., for appellant.

Joseph D. Mancano, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ROSS, WOLLMAN and MAGILL, Circuit Judges.

WOLLMAN, Circuit Judge.

From approximately 1975 to 1983, appellant, Fleet Wallace Maull, took part in an extensive narcotics enterprise to import and distribute large quantities of cocaine. Maull and his partner, Michael Kendrick, purchased cocaine in Santa Cruz, Bolivia, and then smuggled it into the United States by concealing the cocaine inside backpacks equipped with secret compartments and by flying the cocaine in by small private aircraft. Once the cocaine reached the United States, Maull sold the cocaine personally and through distributors in St. Louis, Mis-

souri; Boulder, Colorado; Panama City, Florida; and Salt Lake City, Utah.

Appellant was charged with conspiracy to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846; importation of cocaine in violation of 21 U.S.C. §§ 952(a) and 960(a)(1); attempted importation of cocaine in violation of 21 U.S.C. §§ 963 and 960(a)(1); traveling in interstate commerce in aid of an unlawful activity in violation of 18 U.S.C. § 1952; and with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. He was convicted on each of these counts and sentenced to a total of twenty-four years' imprisonment on the conspiracy, importation, attempted importation, and Travel Act counts. In addition, he was given a concurrent term of thirty years' imprisonment without the possibility of parole on the Continuing Criminal Enterprise charge.

Maull raises several points on appeal: 1) the evidence was insufficient to support his conviction on the Continuing Criminal Enterprise (CCE) charge; 2) the district court improperly instructed the jury on the CCE charge; 3) the CCE statute is unconstitutionally vague as applied to him; 4) the *ex parte* restraining orders and his pre-trial detention improperly denied him the ability to finance and assist in the preparation of his defense; 5) the court erred in denying his motion for a bill of particulars; 6) the district court improperly permitted the Government to elicit testimony from certain witnesses regarding their plea agreements;[1] and 7) the court erred in sentencing him to concurrent sentences on the conspiracy and CCE counts. We address each contention separately.

**CONTINUING CRIMINAL ENTERPRISE**

Maull first contends that the evidence was insufficient to support his conviction under the CCE statute. In evaluating the sufficiency of the evidence, we are reminded that we must view the evidence in the light most favorable to the verdict, sustaining the verdict if supported by substantial evidence. *United States v. Casperson*, 773

F.2d 216, 221 (8th Cir.1985). The Government is to be given the benefit of all reasonable inferences that can be drawn from the evidence, and factual disputes are to be decided in favor of the Government. *United States v. Garcia*, 785 F.2d 214, 225 (8th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986).

In order to be convicted for violation of the CCE statute, 21 U.S.C. § 848, the following five elements must be satisfied:

1) a felony violation of the federal narcotics laws;

2) as part of a continuing series of violations;

3) in concert with five or more persons;

4) for whom the defendant is an organizer or supervisor;

5) from which he derives substantial income or resources.

*United States v. Lewis*, 759 F.2d 1316, 1331 (8th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985). The parties are not in dispute as to whether the first or fifth requirements have been met. They are in disagreement, however, as to whether Maull's narcotics violations were part of a continuing series of violations of federal narcotics laws and as to whether Maull was an organizer, supervisor, or manager with respect to five or more individuals.

**A. Continuing Series of Violations.**

The CCE statute requires the Government to prove that the defendant's narcotics activities were part of a continuing series of violations of federal narcotics laws. Maull alleges that there is no evidence in this case to indicate that the smuggling and distribution endeavors were part of a series of narcotics violations. Moreover, he contends his activities were not part of a continuing series of violations.

A continuing offense is a continuous illegal act or series of acts driven by a single impulse and operated by an uninter-

---

1. This contention is fully addressed in the companion decision of *United States v. Braidlow*,

806 F.2d 781 (8th Cir.1986), decided this day.

mittent force. *United States v. Midstate Horticultural Co.*, 306 U.S. 161, 166, 59 S.Ct. 412, 414, 83 L.Ed. 563 (1939); *United States v. Bergdoll*, 412 F.Supp. 1308, 1317 (D.Del.1976). The term "series" requires "proof of three or more related violations." *United States v. Jones*, 801 F.2d 304, 307 (8th Cir.1986); *United States v. Collier*, 358 F.Supp. 1351, 1355 (E.D.Mich.1973).

The evidence at trial established that from the mid-to-late 1970's through 1983, Maull engaged in a repeated and related series of cocaine smuggling and distribution activities. He persistently participated in smuggling trips to South America, frequently employing his method of concealing the cocaine in hidden compartments in backpacks. Once the cocaine reached this country, the eventual distribution was also organized and persistent. During the time period at issue, Maull regularly fronted, or advanced on credit, cocaine to Robert Busch for distribution in the St. Louis area. He also frequently sold large amounts of cocaine through Lee Ann Russo in Panama City, Florida, and Salt Lake City, Utah, and sold cocaine in Boulder, Colorado, as well. These activities amply satisfied the "continuing" and "series" elements of the statute.

### B. Organizer, Supervisor, or Manager of Five or More Persons.

To be convicted of a CCE offense, a defendant must have acted in concert with five or more persons over whom he held a position of organizer, supervisor, or manager. This requirement of the CCE statute has been given a broad interpretation by the courts: the supervisory relationship need not exist at the same time with respect to all five individuals, the same type of supervision need not be exercised over each person, and the supervisor or manager need not be in personal contact with each person. *United States v. Jones*, 801 F.2d at 308; *United States v. Becton*, 751

F.2d 250, 254–55 (8th Cir.1984), *cert. denied*, 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985).

Maull maintains that the CCE statute was designed to reach only "king pins" of highly structured drug organizations. The case law in this and other circuits belies this contention. *See Becton*, 751 F.2d at 255; *United States v. Mannino*, 635 F.2d 110, 117 (2d Cir.1980); *United States v. Oberski*, 734 F.2d 1030, 1032 (5th Cir.1984). These cases make it clear that a defendant need not have been the dominant organizer or manager of the narcotics enterprise to run afoul of the statute; he need only to have occupied some managerial position. *Becton*, 755 F.2d at 255.

Maull further asserts that the statute does not apply to him because the five individuals he is alleged to have supervised or managed did not act in concert with each other. We find this interpretation of the CCE statute to be unduly narrow and unsupported by the language of the statute. The statute itself provides that the illicit conduct must be "undertaken by [the defendant] in concert with five or more other persons...." Nowhere does the statute require that the individuals supervised or managed must work in concert with anyone but the defendant.

Similarly, Maull's interpretation is unsupported by the decisions in this circuit. In *United States v. Jones*, 801 F.2d 304 (8th Cir.1986), the defendants, Jones and Pfeister, fronted drugs to five or more individuals; there was no indication that all five individuals had worked in concert with each other in reselling the drugs. The focal point of the court's analysis was not whether the five had worked in conjunction with each other, but rather whether they had worked in concert with Jones and Pfeister. Likewise, in *United States v. Becton*, 751 F.2d at 254–55, the court unequivocally stated that the five or more persons need not have acted in concert.[2]

---

2. Appellant also asserts that the trial judge's instruction to the jury was defective because it failed to state that the five or more individuals allegedly supervised or managed by him had to

work in concert with each other as well as with him. Furthermore, he claims that the instruction permitted the jury to combine persons engaged with appellant in separate enterprises in

The evidence supports the jury's finding that Maull had organized, supervised, or managed at least five individuals. One of the persons he organized and managed was Robert Busch. Busch participated in smuggling trips with Maull on two occasions in 1983. Maull recruited Busch for the trips, bought his plane ticket, gave him a backpack to use, set the terms of his payment, determined the route to be taken and when the trip would occur, invested money for the trip, and negotiated the purchase of the cocaine. In addition to the smuggling trips, Maull fronted or consigned roughly one-half of a million dollars' worth of cocaine to Busch that Busch sold in the St. Louis area.

Kathleen Sitter and Susan Sitter also were organized and managed by Maull. They participated in an October 1980 trip to Peru with Maull and Kendrick to smuggle cocaine into this country. Maull and Kendrick provided the Sitters with two backpacks filled with cocaine, which the Sitters carried back to Madison, Wisconsin, for Maull and Kendrick. This trip was coordinated by Maull and Kendrick, and both Kathleen and Susan Sitter were aware they were transporting cocaine for Kendrick and Maull.

Richard Rankin also worked as a courier for Maull. In 1981 he carried a backpack filled with Maull's cocaine into the United States and then delivered it to Maull in Madison, Wisconsin. Rankin also assisted Maull and other organizers of a sixty-seven kilogram transaction by smuggling "buy" money into Bolivia, using the backpack method.

Finally, Maull utilized Lee Ann Russo to expand his distribution network. Maull fronted Russo quantities of cocaine for sale in Panama City, Florida, for approximately three years. Once the cocaine was sold, Russo would deliver the proceeds to Maull. Furthermore, Russo twice arranged two-pound cocaine sales in 1980 to an individual known as "Uncle." Russo introduced Maull to "Uncle" and went with Maull to Salt Lake City to facilitate the drug transactions. Maull paid Russo's expenses and compensated her for her efforts by paying her in cocaine. Russo's efforts were thus supervised or managed by Maull.

### C. Vagueness of the CCE Statute.

Conceding that the CCE statute is constitutionally valid on its face, Maull argues that it is unconstitutionally vague as applied to him. Vagueness challenges to statutes not involving first amendment rights are to be evaluated in light of the particular facts of each case. *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). "[W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of the law." *Screws v. United States*, 325 U.S. 91, 102, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945).

To be convicted of a CCE offense, an individual must have committed a series of narcotics felonies, each one involving specific intent. *United States v. Kirk*, 534 F.2d 1262, 1278 (8th Cir.1976), *cert. denied*, 433 U.S. 907, 97 S.Ct. 2471, 53 L.Ed.2d 1091 (1977). Maull does not deny that he knowingly and intentionally committed the underlying narcotics felonies that constituted the CCE offense. Hence, he can hardly argue that he lacked any warning or knowledge that his conduct here was unlawful.

### EX PARTE RESTRAINING ORDERS AND DETENTION

Approximately one year before Maull was indicted, the Government seized his only asset, a home in Boulder, Colorado, in which he had an equity of more than $100,000. Civil forfeiture proceedings were instituted pursuant to 21 U.S.C.

---

arriving at the requisite number of organized or supervised individuals. Based on our reasoning in the foregoing discussion, we find that the district court properly instructed the jury as to the requirements of the CCE statute.

§ 881(a)(6) in the United States District Court for the District of Colorado. The Government alleged that the property was purchased with proceeds traceable to the sale of controlled substances. Maull by this time had retained counsel in Colorado and had executed a deed of trust on the Colorado home to secure his attorney's fees. Because of the Government's refusal to comply with orders of the court, the forfeiture action was dismissed on December 7, 1984, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

On January 10, 1985, the Government applied for and obtained another *ex parte* restraining order from the United States District Court in Missouri. Later, on the date scheduled for the hearing on the temporary restraining order, the Government applied for and obtained another and separate *ex parte* restraining order issued pursuant to 21 U.S.C. § 853(e)(1)(A). The January 1985 restraining order was then dismissed.

In the meantime, Maull, who had surrendered himself upon return of the indictment, was ordered confined in Farmington, Missouri, some seventy miles from the office of his St. Louis attorney. He was not given a hearing prior to trial on either the forfeiture action in Colorado or on the two restraining orders in St. Louis.

Maull alleges that the *ex parte* restraining orders violated due process and that the restraining orders issued in St. Louis were barred by principles of *res judicata*. He also asserts that the "cumulative effect" of the improper issuance and extension of the restraining order and detention in Farmington created a situation undermining his sixth amendment right to effectively assist in his own defense. We need not decide these issues, however, for we find that any error in issuing the challenged orders was harmless.

The essence of the harmless error doctrine is that "the constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall,* —— U.S. ——, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). The Supreme Court

has made it clear "that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Id. See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986). We have reviewed the record and can confidently say that even if the issuance of the restraining orders and the pre-trial detention at Farmington amounted to a constitutional violation, the error was harmless beyond a reasonable doubt. Whatever impediments the restraining orders or detention caused, they did not prevent the counsel of Maull's choice from ably discharging his duties in representing Maull.

## BILL OF PARTICULARS

Maull alleges that the trial court erred in denying his pretrial motion for a bill of particulars and his subsequent request before trial that he be given the names of the five or more individuals he was alleged to have organized, supervised, or managed. He claims that because these motions were denied he was not adequately apprised before trial of the identities of these individuals.

Maull bears a heavy burden on appeal in establishing that the district court erred in denying his request for a bill of particulars. A denial of a bill of particulars is within the discretion of the trial court and is reversible only for an abuse of discretion. *United States v. Buffington,* 578 F.2d 213, 214 (8th Cir.1978); 1 C. Wright, *Federal Practice and Procedure: Criminal* § 130 (2nd ed. 1982). "The purpose of a bill of particulars is to inform the defendant of the nature of the charges against him and to prevent or minimize the element of surprise at trial." *United States v. Miller,* 543 F.2d 1221, 1224 (8th Cir.1976), *cert. denied,* 429 U.S. 1108, 97 S.Ct. 1152, 51 L.Ed. 561 (1977). So long as the defendant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of

the bill of particulars, the trial court has not abused its discretion.

We are satisfied that there was no abuse of its discretion in this instance. In response to Maull's motion for a bill of particulars, the Government provided the names of approximately sixty unindicted co-conspirators. This list contained the names of all but one of the individuals Maull organized. In addition, two weeks before trial, the prosecution turned over all *Jencks* material to the defense, including all statements of those individuals Maull organized. Lastly, before trial Maull was shown a chart that the prosecution used in its opening argument diagraming the structure of Maull's operations. This chart included all but three of the individuals the Government alleged that Maull organized. Considering the cumulative information Maull received before trial, then, he cannot be heard to say that he was not adequately apprised of the persons that the Government alleged he had organized, supervised, or managed.

## CONCURRENT SENTENCES FOR CCE AND CONSPIRACY

 Maull was sentenced to fifteen years' imprisonment on Count I, conspiracy to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and to thirty years' imprisonment on the CCE violation, the sentences to be served concurrently. Maull contends that it was improper for him to receive concurrent sentences for the conspiracy and CCE offenses.

The relevant inquiry is whether Congress intended that each violation be punished separately. *Jeffers v. United States*, 432 U.S. 137, 155–56, 97 S.Ct. 2207, 2218–19, 53 L.Ed.2d 168 (1977) (plurality opinion). In *Jeffers*, the defendant was convicted under 21 U.S.C. § 846 for being part of a conspiracy to distribute cocaine and heroin. In a separate trial he was also convicted under

§ 848, the CCE statute. He was sentenced to fifteen years under § 846, with a three-year special parole term, and was fined $25,000. For the CCE offense, he was sentenced to life imprisonment and given a $100,000 fine. The Court held that Congress did not intend to allow cumulative punishment for conspiracy and CCE offenses. According to the Court, "the reason for separate penalties for conspiracies lies in the additional dangers posed by concerted activity. Section 848, however, already expressly prohibits this kind of conduct. Thus, there is little legislative need to further this admittedly important interest by authorizing consecutive penalties from the conspiracy statute." *Id.* at 157, 97 S.Ct. at 2219. Since Jeffers had received a fine of $125,000, which was greater than the maximum fine of $100,000 permitted under the CCE statute, he was entitled to have the fine imposed in the second case reduced so that the total fines together were not greater than $100,000.[3] The continuing validity of the plurality opinion in *Jeffers* was later recognized in *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 2420, 85 L.Ed.2d 764 (1985), where the Court made a purposeful effort to reconcile its holding in *Garrett* with the plurality opinion in *Jeffers*.

In *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), the issue was whether a felon who was indicted on charges of receiving a firearm shipped in interstate commerce, 18 U.S.C. §§ 922(h)(1) and 924(a), and also for the possession of that same firearm, 18 U.S.C. App. § 1202(a)(1), could be convicted and concurrently sentenced for both crimes. The Court determined that Congress did not intend that a defendant's conduct be subject to punishment under both §§ 922(h) and 1202(a). Thus, the Court held that the only way to be faithful to Congress' intent

---

**3.** The Court in *Jeffers* found it unnecessary to examine the issue of whether the prison sentences presented the possibility of cumulative punishment. 432 U.S. at 155 n. 24. Based on the Court's reasoning in *Ball v. United States*,

470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), however, we believe that the Court would find that such concurrent sentences amount to cumulative punishment.

would be to have the district court vacate one of the underlying convictions: "One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense." *Id.* at 1673. The Court pointed out that there are potential adverse consequence in allowing the second conviction to stand. The second conviction, for example, may delay the defendant's chances for parole or may be used to impeach the defendant's credibility. *Id.* at 1674. Furthermore, even if the sentence is served concurrently with another sentence, it still carries the social stigma that attaches with any criminal conviction. *Id.*

In the light of *Jeffers* and *Garrett,* we hold that the CCE and conspiracy charges may not be the subject of double punishment. Accordingly, even permitting concurrent sentences for violations of both of these statutes would be contrary to Congress' intent. This is consistent with our prior decisions in *United States v. Samuelson,* 697 F.2d 255, 259-60 (8th Cir.1983), *cert. denied,* 465 U.S. 1038, 104 S.Ct. 1314, 79 L.Ed.2d 711 (1984), and *United States v. Kirk,* 723 F.2d 1379, 1381 (8th Cir.1983), *cert. denied,* 466 U.S. 930, 104 S.Ct. 1717, 80 L.Ed.2d 189 (1984), which were decided before *Garrett* and *Ball,* wherein we vacated the conspiracy conviction after the defendants received concurrent sentences for the conspiracy and CCE offenses.

The case is remanded to the district court with directions to vacate Maull's conviction under 21 U.S.C. § 846. In all other respects, the conviction is affirmed.