**UNITED STATES of America, Appellant,**

v.

**Mary Magdalene JOHNSON; Carolyn Faye Walters, Appellees.**

No. 92–1471.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 11, 1992.

Decided Dec. 15, 1992.

Rehearing Denied Jan. 20, 1993.

Kandice L. Wilcox, Asst. U.S. Atty., Cedar Rapids, IA, argued for appellant.

Kathryn B. Goudy, Des Moines, IA, argued for appellee Carolyn Faye Walters.

Richard L. McCoy, Sioux City, IA, argued for appellee Mary Magdalene Johnson.

Before MAGILL, Circuit Judge, LAY, Senior Circuit Judge, and BEAM, Circuit Judge.

LAY, Senior Circuit Judge.

The government has appealed the order of the district court[1] granting new trials and severance to Mary Magdalene Johnson and her sister Carolyn Walters. Johnson and Walters were both convicted of violating 21 U.S.C. § 846 (1988), for conspiracy to knowingly possess narcotics with intent to distribute. Johnson was additionally convicted of two counts of possession with intent to distribute narcotics in violation of 21 U.S.C. § 841(a)(1) (1988) and possession with intent to distribute cocaine within one thousand feet of an elementary school in violation of 21 U.S.C. § 845a (1988) and 18 U.S.C. § 2 (1988), maintenance of a facility for purpose of unlawfully storing, distributing and using a controlled substance in violation of 21 U.S.C. § 856 and 18 U.S.C. § 2 (1988); and engagement in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a) (1988). The government asserts that the district court lacked jurisdiction because both defendants failed to timely file their motions for new trial pursuant to Fed.R.Crim.P. 33. Alternatively, the government asserts that the district court abused its discretion in granting the new trials.

We affirm the order of the district court.

BACKGROUND

On May 4, 1989, based on information from a confidential informant, the police exercised a search warrant on Mary Johnson's residence. Among the items seized were approximately 195.38 grams of cocaine, some of which was packaged in small bundles. Both Mary Johnson and her sister Carolyn Walters were present in the house at the time the search warrant was executed.

Mary Johnson was charged in a six-count indictment on August 30, 1989: Count I charged distribution of approximately 1.15 grams of cocaine on May 3, 1989; Count II charged possession with intent to distribute approximately 195.38 grams of cocaine on May 4, 1989; Count III charged conspiracy to distribute and possess with the intent to distribute cocaine between March 1988 and May 1989; Count IV charged possession of cocaine with intent to distribute within 1000 feet of a school on May 4, 1989; Count V charged maintaining, managing, or controlling a building at 410 Cook Street for the purpose of making it available for controlled substance offenses; and Count VI charged engaging in a continuing criminal enterprise (CCE) between about April 1986 and May 1989. The indictment makes clear that the government intended to include Mary Johnson's 1986 convictions for conspiracy to distribute cocaine and aiding and abetting possession with intent to distribute cocaine (hereinafter referred to as the "Ben Fish" case) in its effort to sustain

---

1. The Honorable Donald E. O'Brien, Chief Judge for the United States District Court for the Northern District of Iowa.

the continuing criminal enterprise conviction.[2] Carolyn Walters was indicted on Counts II, III, IV, and V.

The trial proceeded on the basis of the government's representations that in order to establish a continuing criminal enterprise, it planned to show Mary Johnson guilty of one of the five other counts in the indictment plus two other transactions that occurred before those in the present indictment.[3] The government maintained this position even after it had rested its case.

As part of the defendant's case in chief, Mary Johnson took the stand and testified in regard to her prior "Ben Fish" case convictions. Defense counsel maintains that Mary Johnson's decision to take the stand was premised on her belief and reliance that the government planned to use the "Ben Fish" conviction as one predicate offense necessary to prove the continuing criminal enterprise charge.

On the tenth day of trial, however, the government argued that the controlled buy on May 3, 1989 and the possession with intent to distribute on May 4th (two of the five counts in the indictment) counted as two separate transactions and thus counted as two of the three predicate offenses. Additionally, the government argued that the jury need not have to specify which incidents constituted the three predicate offenses.[4] The court then became aware that as to the predicate violations making up a series of three, the law allows the government to count offenses charged in the indictment.[5] It therefore determined that the CCE charge could be proven by establishing Count I, Count II, and Count III without ever referring to the "Ben Fish" case or anything in between. Both defendants then motioned for mistrials, arguing that they were unfairly prejudiced by the government's change in strategy this late in the trial. Recognizing that the conduct of the trial had been unfair to the defendants, the court, in an attempt to remedy any possible prejudice, submitted a verdict form which required the jury to specify which three predicate offenses it had found to prove the CCE charge.[6] The

2. Count VI of Mary Johnson's indictment states as follows:
   That between about April, 1986 and about May, 1989, the exact dates being unknown to the Grand Jury ... Mary Magdalene Johnson did knowingly and intentionally engage in a continuing criminal enterprise in that she did the following:
   1. Knowingly commit a felony provision of Subchapter I of the Controlled Substance Act of 1970 and the Controlled Substance Penalties Amendment Act of 1984 ... as part of a continuing series of violations of said statutes including:
   a. Conspiracy to distribute cocaine ...
   b. Distribution and possession with the intent to distribute cocaine ...
   The Grand Jury incorporates Counts I through V as if fully set forth herein.

3. The issue of what constitutes continuing criminal enterprise was an issue of first impression for the Northern District of Iowa and had not been briefed for the district court by either side. The confusion over this issue first became apparent in the pretrial conference in chambers on jury instructions. The court stated that it understood that the government would have to prove Mary Johnson guilty of any of Counts I, II, III, IV, or V plus at least two other offenses that occurred prior to the present violations. The court specifically suggested that the "Ben Fish" case might be one previous offense that the government could use to establish the continuing criminal enterprise. Both the govern-

ment and defense counsel at that point in the trial agreed with this interpretation of the law. (Tr. 34–35.)

4. The government contended:
   Our position is that from May 1986—April 1986 through and including May of 1989, there was a continuing series of three or more transactions. That's what we have to prove. The jury doesn't have to prove—become unanimous on which three, they just have to be unanimous on an element that there were three or more ...

5. Although both the government and defense counsel had still failed to brief and articulate for the court what exactly is required for a continuing criminal enterprise conviction, the court became aware of *Garrett v. United States*, 471 U.S. 773, 776, 105 S.Ct. 2407, 2410, 85 L.Ed.2d 764 (1985), which, although primarily a double jeopardy case, upheld a lower court's conclusion that as to predicate offenses of a continuing criminal enterprise charge, the government could count the offenses charged in the indictment.

6. Instruction No. 13a stated as follows:
   As to paragraph 2 of Instruction No. 13 [that the jury must find that the offense or offenses charged in Counts I, II, III, IV, or V were part of a continuing series of three or more related offenses], you are instructed as follows:

court also expressly reserved its ruling on the motions for mistrials until after the verdicts had been returned.

On May 10, 1990, the jury returned verdicts of guilty as to Mary Johnson on all six counts and as to Carolyn Walters on the conspiracy in Count III. The jury found Carolyn Walters not guilty of Count V.[7]

JURISDICTION

■ Following the verdict, both Mary Johnson and Carolyn Walters filed motions for severance and new trials in the district court. Under Rule 33 of the Federal Rules of Criminal Procedure, a defendant must file a motion for new trial within seven days of the time the verdict is returned, unless the district court has otherwise extended the time to file the motion. In the latter case, the district court must grant the extension of time within the seven day period from the time the verdict is returned. Rule 33, Fed.R.Crim.P. It is well settled that failure to file timely motions for new trial is jurisdictional, *United States v. Spector*, 888 F.2d 583, 584 (8th Cir.1989).

Mary Johnson filed her motion for new trial on May 22, 1990. Carolyn Walters filed her motion for new trial on May 24, 1990. There is no dispute that both of these motions exceeded the seven day period.[8] The defendants urge that the last clause of Rule 33 allows for an extension of time "as the court may fix during the seven day period." Rule 33, Fed.R.Crim.P. Defendants argue that the district court granted an extension of time for renewing their motions for mistrial within the seven day period. This could only be done by filing a motion for new trial. On May 16, 1990, the district court entered an order which reserved hearing on all "pending matters" until May 29, 1990. Both defendants urge that they relied on the district court's order of May 16, entered within the seven day period, as being an extension of time up to May 29 for filing and hearing their respective motions for new trial.

The government contends, however, that there were no motions for new trial pending[9] at that time and therefore there was no extension of time. The record reflects that defendants motioned for severance several times during the trial and for mistrial when the government changed theories as to what predicate acts in the criminal enterprise offense it was relying on. The court reserved judgment on these claims, specifically stating:

> This court feels that this case has not shook down exactly as it should. And it may be partly the court's fault, I plead guilty if you want me to, but at least part of the responsibility is that the gov-

*The government has introduced evidence that:*
  Count I occurred on or about May 3, 1989;
  Count II occurred on or about May 4, 1989;
  Count III occurred between March 1988 and May 1989;
  Count IV occurred on May 4, 1989;
  Count V occurred between January 1989 and May 1989;
  For purposes of Count VI, the continuing criminal enterprise, Counts II and IV occurred on the same day, are therefore simultaneous, and can be used to compose only one of the needed three or more related offenses needed under Count VI, a continuing criminal enterprise.
  The government has stated in its opening statement and introduced evidence in relation to the picking up of a package of cocaine at the Sioux City Federal Express office on November 22, 1986. By reason of this contention, the government has been allowed to introduce evidence and cross-examine the defendant, Mary Magdalene Johnson, about occurrences between April of 1986 and March of 1988, the day the alleged conspiracy is sup-

posed to have commenced. If you find that the facts occurring on November 22, 1986 have not been sufficiently proven to persuade you that that incident should be one of the three or more related offenses needed under Count VI, then you may not and should not consider any evidence you have heard pertaining to incidents occurring prior to March 1988, the day the alleged conspiracy is supposed to have commenced.

7. Counts II and IV had been dismissed by the district court.

8. Carolyn Walters argues that the date the certificate of service was signed, not the filing date, should be used to determine whether the motions were timely filed. We find no merit to this argument.

9. Pending is defined in Webster's dictionary as "not yet decided" or "while waiting" or "being in continuance." Webster's New Collegiate Dictionary (9th ed. 1986).

ernment never did until the last 24 hours after we've been going for 10 days or two weeks really say what they hoped to show in relation to those three. And that's why we're putting those in so that we'll know.

The court is going to reserve ruling on the motions for judgment of acquittal and for motions for a new trial—motions for a mistrial, I mean, and the Court will possibly reconsider those if it seems appropriate after any verdict is returned.

We believe that what the court intended to reserve was the issue of prejudice caused by the government's changing position. This was the basis for defendants' motion for mistrial and the court was simply acknowledging that it would be the basis for a motion for new trial should the jury return a verdict of guilty.

If the district court's order lends itself to a reasonable construction so as to allow the defendants sufficient time for filing to avoid a jurisdictional time bar, this court should make such a construction. The rights of the parties should not turn on a technical misunderstanding of the district court's order. This court has long liberally construed notices of appeal to avoid irregularities which would otherwise deprive a party of jurisdiction to appeal. *See Berdella v. Delo*, 972 F.2d 204, 207 (8th Cir.1992). Most recently, the Supreme Court held that courts should liberally construe the requirements of Rule 3 of the Federal Rules of Appellate procedure. *Smith v. Barry*, —— U.S. ——, ——, 112 S.Ct. 678, 681–82, 116 L.Ed.2d 678 (1992). When papers are "technically at variance with the letter of [Rule 3], a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Id.* (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316–317, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988)).

We feel in light of the court's ambiguous order of extension of time, a liberal construction of Rule 33 of the Federal Rules of Criminal Procedure is likewise warranted here. All parties, including the government, construed the May 16 order as an extension of time to file the motion for new trial. In addition to the defendant's counsel's statement as to such reliance being on the record, we view the district court's entertainment of these motions as consistent with such construction. The government raises the jurisdictional question for the first time on this appeal. Of course the government may do so, but the failure of the government to complain in the district court corroborates the good faith of the defendants' counsel in believing that an extension of time had been granted by the district court. We deem reliance by counsel on the May 16 order as an extension of time to be reasonable, in view of the fact that the motions for new trial recited the very grounds reserved by the district court during the trial for later ruling. There is no question that although there were no pending written motions for new trial filed as of May 16, the day the court entered his order of extension, both defendants had pending before the court motions for severance and a mistrial, on which the court had reserved ruling. The written recitation of these motions made in the post verdict motions for new trial merely formalized what was already pending before the court.

On this basis, in the interest of justice, we find no jurisdictional defect in the filings of the motions for new trial. We construe the court's action as an extension of time, relied upon by the defendants and the government, in which the defendants could file their formal motions for new trial.

## DEFENDANT JOHNSON

■ The government alternatively asserts that the district court abused its discretion in granting a new trial to Mary Johnson. It argues that the district court erred in concluding that the United States had either changed its position or had failed to apprise the defense sufficiently of what three offenses were being urged as supporting the "series" element. The government claims that the defense had been on notice since the indictment was returned that the government intended to use evidence pertaining to Johnson's earlier conviction, including the "Ben Fish" incident,

as part of its proof in the CCE count. Moreover, the government argues that no prejudice has been shown which would warrant the drastic remedy of a new trial.

Although the court's authority to grant a new trial under Rule 33 of the Federal Rules of Criminal Procedure should be exercised sparingly and with caution, the trial court nevertheless has broad discretion in deciding whether to grant a new trial in the interest of justice. *U.S. v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir.1980). We do not believe the district court abused its discretion here.[10]

There exists no legal requirement that the predicate felonies be specifically listed in the indictment, so long as the defendant has actual notice of the charges. *United States v. Becton*, 751 F.2d 250, 256–57 (8th Cir.1984). Nonetheless, we do not believe that actual notice of the charges cures the prejudice to a defendant who, in deciding whether to testify regarding a prior conviction, relies on the affirmative representations by the government of how it plans to prosecute its case.

We find the government's reliance on *Becton* to be misplaced here. In *Becton*, although we did not find the failure to list the predicate felonies in the indictment to be reversible error, we found it significant to our decision that the defendant had not demonstrated any prejudice caused by failure to list the predicate offenses. We stated:

> Significantly, Becton fails to allege that any of the felonious activities proved at trial took him by surprise. Furthermore, he did not raise this objection to the indictment before or during the trial, and on appeal he raised it for the first time in his reply brief. These facts lead us to conclude that the government's failure to specify underlying felonies in Count I of the indictment did not prejudice Becton in any way.

*Id.* at 256.

Indeed, we specifically stated that we did not approve of the government's method of charging the case and indicated that it would be far preferable to list the felonies comprising the continuing criminal enterprise in the indictment, in order to diminish the potential problems suggested by *Becton*. *Id.* at 257. However, those problems—i.e. prejudice—were not found to have occurred in Becton's case.

In the present case, the government affirmatively represented to the court and to defense counsel what predicate acts it intended to prove. Early in the trial, before any testimony, the following exchange took place:

---

10. The trial court entered a thorough discussion as to its reasons for granting the motions. It stated:

> In retrospect, it is clear that there was prejudice to the defendant associated with the government's shifting position. If the government had listed the felonies comprising the criminal enterprise in the CCE count of the indictment as suggested in *Becton*, the confusion and ensuing prejudice in this case would have been eliminated.
>
> ... The defense should be able to trust in the government's assurances regarding the criminal acts it intends to prove, particularly when those assurances will determine whether the defendant will testify. Johnson relied on those assurances to her detriment. Justice requires that Johnson be given a new trial on the continuing criminal enterprise charge.

In a footnote accompanying the above text, the court said:

> fn6As the court began to consider the verdict forms to be used at the trial, it was obvious that over the strenuous objections of the government, we had to either declare a

mistrial or make the jury be very precise as to what persons had been controlled by Mary Johnson and precisely what "events" (predicate offenses) the jury had considered. (Tr. Vol. II, pp. 2303–4.) If there were a conviction on continuing criminal enterprise, the court wanted to know exactly what the jury had considered and found. (*See* Verdict Form 8.) The jury named more than five people who were controlled by Mary Johnson and found five events that she was responsible for, not just three as required. The government now maintains the evidence was so overwhelming and the verdict forms so inclusive that this court should deny all motions. The court's efforts to try to clarify a bad situation by use of a very precise verdict form did not accomplish what was intended, i.e., the possibility that a fair trial could still be had, but the verdicts arrived at by the jury made it clear that the basic unfairness caused by the prosecution's lack of early knowledge (and thereby the court's) of what was appropriate, had been too damaging to the defendants' case to be overcome.

THE COURT: They [the government's attorneys] understand that they've got to—I think they do anyway, I'll ask them, but—if they can't just show for example, that they're guilty of—guilty of one of these counts that are in here; in other words, 1, 2, 3, 4 or 5. They've got to show they're guilty of one of those, and they've got to show that they've got at least a couple ahead of that time. Is that the way you understand it?

[ASSISTANT U.S. ATTORNEY] Wilcox: Yes, your honor.

[DEFENSE ATTORNEY] McCOY: So they have to show two previous transactions and violations of that section?

THE COURT: In order to have three total, and the total can't be—only one can come out of this indictment. Is that the way you understand it?

[ASSISTANT U.S. ATTORNEY] HOBART: That's my understanding, yes

THE COURT: All right.

MS. WILCOX: That's my understanding.

The court then rephrased the understanding of everyone stating:

As I would understand it, they are going to say that at a certain time in September of whatever year it was—the drugs went out to Ben Fish. That may be one. Then they are going to show something else, and I'm not going to ask them exactly what it is right now. They have got to say, okay, that's number 1. Now, we want you to convict her here of Count II in this indictment which she is charged in. Then we've got another one over here, and on such-and-such a day she did such-and-such a thing. Is that right?

The government again answered "we understand only one "event" can come from this indictment." (Tr. Vol I, pp. 34–35; Vol. VIII. p 1573;)

Later, toward the end of the trial, after Johnson had testified regarding her prior conviction, the government became aware that all the predicate offenses could be taken from the current indictment. The government then argued that the jury need not specify which three predicate offenses constituted the series element. The court

acknowledged the problem caused by the government's plan to not necessarily rely on the "Ben Fish" conviction as one of the predicate offenses stating:

... In the early motions talking about double jeopardy and such things as that, Mr. McCoy was arguing that ... you can't do it that way, you can't convict her of what she did November '86. And the government was arguing, hey, all we want to show is it was continuing, and its obvious that in the indictment it was included, November 22nd of '86, because there was a finding of guilty, and she's going to have to admit to that and so forth, although she didn't actually do that when she got on the stand, and I'm not faulting her for that.

But the government got a big plus there, they got to say all kinds of dirty things about her and the operation and everything else, and now they want to have me ignore the fact that that's all in the record. And if the jury were to come back and say, without specifying anything, we've got three that we found happened on March—or May the 3rd, there was one sale, there was two sales, and it was within a school area, therefore, we're not going to tell anybody, but those are the three we've decide on.

(Tr. Vol XI, pp 2298–99).

Here, unlike the *Becton* case, 751 F.2d 250 (8th Cir.1984), Mary Johnson does not claim that the indictment fails to provide sufficient notice of the charges against her. Rather, she claims the government made affirmative representations that it intended to use to the Ben Fish conviction to prove the CCE charge, and she relied on those representations in her decision to take the stand and testify about this prior drug conviction. Having done so, she was prejudiced by the government's "bait and switch" tactics.

We believe that the defense should be able to trust in the government's assurances regarding the criminal acts it intends to prove, particularly when those assurances will determine whether the defendant will testify. The trial court was sufficiently apprised of the fact that Johnson relied

on those assurances to her detriment. The district court was well within its discretion in determining that justice required that Johnson be given a new trial on the continuing criminal charge.

DEFENDANT WALTERS

■ The government asserts that the district court abused its discretion in granting Carolyn Walters severance and a new trial. We find no abuse of discretion. The "spillover" testimony from the case against Mary Johnson engulfed Carolyn Walters and swept her along the flow. We are persuaded that Mary Johnson's testimony was as prejudicial to Carolyn Walters as it was to Johnson, even though Walters was not charged in Count VI with continuing criminal enterprise.

The order granting Mary Johnson a new trial is affirmed. The order granting Carolyn Walters severance and a new trial is affirmed.