Jim D. **BLANKENFELD,** Petitioner,

v.

Harold **CLARKE,** Respondent.

No. CV89–L–313.

United States District Court, D. Nebraska.

Sept. 12, 1990.

spinal column, head, neck, shoulders and nerv-　　ous system.

Jim D. Blankenfeld, Lincoln, Neb., pro se.

W. Scott Davis (Court-appointed), Robert M. Spire, Atty. Gen., Sharon M. Lindgren, Asst. Atty. Gen., Lincoln, Neb., for respondent.

## MEMORANDUM ON REPORT AND RECOMMENDATION

URBOM, District Judge.

The magistrate's report and recommendation on this petition for writ of habeas corpus is that the writ of habeas corpus be granted, unless the petitioner is given a new trial within a reasonable time. The judges involved in the legal entanglements leading to this day have been about equally divided in their views. I find it a fascinating case from an analytical standpoint and, after a review of the thinking of those judges, together with the excellent briefs in support of the varying positions, I conclude that the writ must be granted.

Four judges of the Supreme Court of Nebraska in interpreting Nebraska law have declared that the two Nebraska statutes—§§ 39–669.07 and 39–669.08—state separate and distinct offenses. Justices White and Shanahan in dissent and Caporale and Fahrnbruch in concurrence declared it in the petitioner's direct appeal, *State v. Blankenfeld*, 229 Neb. 411, 427 N.W.2d 65 (1988). None was writing a majority opinion; the four constituted a majority on that issue. That declaration was in accord with prior Nebraska law. *See State v. Stabler*, 209 Neb. 298, 306 N.W.2d 925 (1981).

The petitioner was charged under § 39–669.08, as the information specifically stated. There was no evidence to support that charge. There was, therefore, a denial of due process under the test articulated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

█ The question then is whether the loss of the constitutional right was harmless beyond a reasonable doubt. Two of the justices of the Supreme Court of the State of Nebraska thought it was. As far as I can tell from the record, the defense at the trial would not have been any different if there had been a recognition that the statute pleaded was not the statute of which a violation was proved. But under the peculiar circumstances of the case I am at least uneasy about whether double jeopardy would protect the petitioner in the future. There was no decision by the Supreme Court of Nebraska as to which statute he was convicted under. If in the future he were charged with violation of one of the statutes, I am not at all sure that his present conviction would save him from another for the same set of facts. "What lies at the heart of the Double Jeopardy Clause is the prohibition against multiple prosecutions for 'the same offense.'" *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). Uneasiness may not be a solid basis for decision, but it is enough to cause me to say that the deprival was not harmless beyond a reasonable doubt.

## REPORT AND RECOMMENDATION

DAVID L. PIESTER, United States Magistrate.

This is a habeas corpus action under 28 U.S.C. § 2254. The petitioner is on parole from the Nebraska Department of Correctional Services. The matter has been referred to me for recommended disposition pursuant to 28 U.S.C. § 636.

## BACKGROUND

Petitioner was convicted by the District Court of Lancaster County, Nebraska, of driving while under a lifetime motor vehicle operator's license suspension, a Class IV felony under Nebraska law. He was sentenced to 20 months to 5 years imprisonment and fined $10,000.00. Petitioner appealed the convictions and sentences to the Nebraska Supreme Court. On appeal, he raised several assignments of error, the general thrust of which was that the previous sentence of a lifetime suspension of driving privileges was void because it was imposed by the wrong court. Petitioner also claimed that the district court had erred in concluding that he was not a proper candidate for probation. *See State v. Blankenfeld*, 229 Neb. 411, 413, 427 N.W.2d 65, 67 (1988). The Nebraska Supreme Court rejected those arguments. *Id.* at 416–17, 427 N.W.2d at 68–69. None of them is at issue in the instant case.

While petitioner's appeal was pending, the Nebraska Supreme Court requested supplemental argument on the following issues: "Is the variance between the information and proof fatal to the convictions? Alternatively, is the language which describes the specific violations which resulted in the permanent suspension mere surplusage?" *Id.* at 413, 427 N.W.2d at 67. The need for this supplemental argument arose from language contained in the information under which petitioner was charged. The information alleged that petitioner was a "person whose Nebraska driver's license had been permanently revoked pursuant to subdivision (c) of subsection 4 of *Neb.Rev.Stat.* Section Number 39–669.08," who operated a motor vehicle while under such suspension. *Id.* at 414, 427 N.W.2d at 67. *Neb.Rev.Stat.* § 39–669.08(4)(c) (Reissue 1984), at the time relevant to this case, provided for a permanent suspension of driving privileges upon a third conviction of refusing to submit to a preliminary test of the blood, breath, or urine. The records before the Nebraska Supreme Court established, however, that petitioner's driver's license had been permanently revoked pursuant to *Neb.Rev. Stat.* § 39–669.07(3) (Reissue 1984), upon a conviction for a third offense of driving while intoxicated. *Blankenfeld*, 229 Neb. at 414, 427 N.W.2d at 67.

After supplemental briefs were received, the Nebraska Supreme Court affirmed petitioner's conviction. In a *per curiam* opinion, three judges concluded that the erroneous language in the information was "mere surplusage." *Id.* at 415, 427 N.W.2d at 68. These judges concluded that there were two essential elements to the crime: (1)

operation of a motor vehicle, and (2) being under a permanent license suspension. *Id.* The judges also noted that the two statutes provided for the same offense, a Class IV felony, in the event a person operated a motor vehicle while under the permanent suspension imposed by each. *Id.* at 414, 427 N.W.2d at 67.

Two judges concurred in the affirmance of the conviction, but on a different ground. They noted that everyone in the district court—the prosecution, the defense, and the court—had approached the case as one prosecuted for driving under a permanent suspension under § 39–669.07. *Id.* at 420–21, 427 N.W.2d at 71 (Caporale, J., concurring). Although acknowledging that this offense was separate and distinct from driving under a license suspended pursuant to § 39–669.08, the concurring judges concluded that no one had been misled by the defect in the information and, in the unique circumstances presented, the error was "harmless beyond a reasonable doubt." *Id.* at 421, 427 N.W.2d at 71.

Two judges dissented. They concluded that due process principles required reversal of the conviction because the information failed to apprise petitioner of the offense with which he was charged. *Id.* at 419–20, 427 N.W.2d at 70 (White, J., dissenting). The dissenting judges stated that it was not the province of the court "to turn a blind eye to explicit statutory language which defines a crime in order to shroud an obvious error made by the State...." *Id.* at 418, 427 N.W.2d at 69.

In the instant proceeding, petitioner argues that the variance between the information and the proof adduced in the trial court deprived him of due process. The respondent argues that the petitioner failed to properly raise this claim before the Nebraska courts and is therefore barred from raising it in a federal habeas action, absent a showing of cause and prejudice. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). According to the respondent, such a showing has not been made. The respondent also argues that petitioner is not entitled to relief on the merits.

## PROCEDURAL DEFAULT

The parties are in agreement that petitioner has exhausted his available state court remedies. *See Rose v. Lundy*, 455 U.S. 509, 518–19, 102 S.Ct. 1198, 1203–04, 71 L.Ed.2d 379 (1982). They disagree, however, as to how exhaustion has been achieved. Petitioner contends that state court remedies have been exhausted by virtue of his "fair presentment" of his constitutional claim to the Nebraska Supreme Court on direct appeal. *See Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982). The respondent contends that no such presentment was made, but concedes that no state court remedy is presently available to petitioner because his claim could have been presented on direct appeal and therefore cannot be the subject of a post-conviction action under *Neb.Rev. Stat.* § 29–3001. *State v. Reddick*, 230 Neb. 218, 223, 430 N.W.2d 542, 546 (1988). Under either scenario, petitioner has exhausted his state court remedies.

■ The argument of the respondent does raise the issue of procedural default. As noted above, the failure to fairly present a constitutional claim to the state courts at a time when a state court remedy was available will, in certain circumstances, bar federal review of that claim in a habeas action, absent a showing of "cause" for and "prejudice" from that procedural default. *Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506. The respondent's argument for a finding of procedural default is twofold. First, he contends that petitioner failed to raise the constitutional claim before the trial court and in his assignments of error to the Nebraska Supreme Court. Second, he argues that petitioner's supplemental brief to the Nebraska Supreme Court failed to address the issue of the variance in the information and proof in constitutional terms.

■ The first aspect of the respondent's procedural default argument is without merit. It is true that petitioner failed to raise his constitutional claims in the trial court or in his initial brief to the Nebraska Supreme Court. The failure to do so

would, in ordinary circumstances, amount to a procedural default which would bar consideration of his claim here, absent cause and prejudice. *Id.* However, the procedural default of petitioner in failing to raise his claim at those two opportunities was cured when the Nebraska Supreme Court invited supplemental argument on the issue.

The United States Supreme Court has recently stated:

> a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a procedural bar.

*Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). Under Nebraska law, the Nebraska Supreme Court could have held, on direct appeal, that petitioner's failure to raise the variance issue in the trial court or in his assignments of error barred consideration of the issue on appeal. *See State v. Ledingham,* 217 Neb. 135, 136, 347 N.W.2d 865, 867 (1984). The Nebraska Supreme Court did not do this, however, choosing instead to invite argument on the issue not properly preserved. The invitation was clearly of sufficient breadth to encompass argument of constitutional issues. Certainly, the Nebraska Supreme Court did not rely on petitioner's failure to preserve the issue in the trial court and his original appellate brief as a bar to consideration of the merits; it reached the merits expressly.

█ The remaining question, and the second aspect of the respondent's procedural default argument, is whether the constitutional aspect of the merits of petitioner's claim were fairly presented to the Nebraska Supreme Court. This is a somewhat closer question; the supplemental brief filed by petitioner in the Nebraska Supreme Court primarily cites Nebraska cases and does not make a great number of explicit references to due process of law.

When analyzed under "fair presentment" principles, however, the federal aspect of petitioner's claim was sufficiently argued before the Nebraska Supreme Court to avoid procedural default.

█ The ultimate inquiry in determining whether a federal claim has been fairly presented to the state courts is whether the petitioner has provided those courts with a " 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson,* 459 U.S. at 6, 103 S.Ct. at 277. *See also Picard v. Connor,* 404 U.S. 270, 276–77, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971). The Eighth Circuit has held that this requires the petitioner to make express reference to the Constitution, a federal case, or a specific constitutional right. *Purnell v. Missouri Department of Corrections,* 753 F.2d 703, 706 (8th Cir.1985) (*citing Thomas v. Wyrick,* 622 F.2d 411, 413 (8th Cir.1980), *cert. denied,* 459 U.S. 1175, 103 S.Ct. 824, 74 L.Ed.2d 1020 (1983)). In *Kelly v. Trickey,* 844 F.2d 557 (8th Cir.1988), the test was broadened somewhat to include citation to a "state case raising a pertinent federal constitutional issue." *Id.* at 557 (*quoting Martin v. Solem,* 801 F.2d 324, 330–31 (8th Cir.1986)).

Petitioner's supplemental brief to the Nebraska Supreme Court, as noted, primarily relies on state law. Indeed, a great deal of the brief is devoted to arguments that the "plain error" doctrine should apply and permit review of the claim on which the court had granted supplemental argument. However, the brief makes express reference to the federal constitution, stating that, "[t]he defect in the [information in] the instant case is fatal to providing the Appellant [petitioner] with due process protection." Supplemental Brief at 10.[1] In addition, although the supplemental brief cites no federal due process cases, it does cite *State v. Buttner,* 180 Neb. 529, 143 N.W.2d 907 (1966) as authority for the re-

---

1. This cannot reasonably be interpreted as a reference to the due process protections granted by Article I, Section 3 of the Nebraska Constitution. The Nebraska Constitution contains an express provision setting forth the requirements for charging an individual with a crime, *Neb. Const.* Art. I, § 11, to which petitioner makes express reference in his brief. Supplemental Brief at 17. Thus, the reference to due process must be to the United States Constitution.

quirements of a criminal information. Supplemental Brief at 6. In *Buttner,* the Nebraska Supreme Court stated:

> Due process of law requires only that the accused be given sufficient notice of the nature of the charge against him in order that he may prepare a defense and plead the judgment as a bar to any subsequent prosecution.

*Id.* at 538, 143 N.W.2d at 912. The entire thrust of the merits of petitioner's supplemental argument to the Nebraska Supreme Court was that the information was not sufficient to perform these two functions.

These references, taken in context, raise the variance issue in federal constitutional terms. It is important to understand that there are two aspects to the variance claim, as argued here and in the Nebraska Supreme Court. The first is the deficiencies in the information and their effect on the notice to which petitioner is entitled as a matter of due process, as noted in *Buttner.* The second is the resulting conviction, one which is based on proof of guilt of an offense not specifically charged in the information. Both of these aspects of the claim were presented to the Nebraska Supreme Court. *See* Supplemental Brief at 10, 17.

The respondent argues that the failure of the plurality and concurring opinions to address petitioner's appeal in federal terms means that petitioner did not fairly present his constitutional claims. This argument misses the mark for two reasons. First, it is not necessary that petitioner obtain a "precise ruling" on his federal claim in order to have fairly presented the underlying issue. *Tyler v. Gunter,* 819 F.2d 869, 871 (8th Cir.1987). Second, even accepting the respondent's erroneous framework for analysis—that a majority of judges of the state's highest court must recognize and address a federal issue for it to be fairly presented—a reading of the opinions of the Nebraska Supreme Court in this case indicates such recognition. Judge White's dissenting opinion addressed the issue in federal terms. *Blankenfeld,* 229 Neb. at 419–20, 427 N.W.2d at 70. Judge Caporale's concurrence did not discuss the doctrinal

basis for petitioner's claims of error, but merely rested on the notion that the error by the state was harmless under the circumstances. *Id.* at 420–21, 427 N.W.2d at 71. Judge Caporale did note, however, that he found "much of merit in [his] learned brother White's dissenting opinion." *Id.* at 420, 427 N.W.2d at 71. This would indicate that Judges Caporale and Fahrnbruch also recognized the federal aspects of petitioner's claim—the bases for Judge White's dissent—although they did not agree that they required reversal.

Even apart from this analysis, another factor supports a finding of fair presentment. The Eighth Circuit has indicated, though it does not appear to have expressly held, that allegations of "a pattern of facts that is well within the mainstream of constitutional litigation" would be sufficient to fairly present a constitutional claim, even in the absence of express citation or reference to federal authority. *Tyler,* 819 F.2d at 870 (*quoting Martin,* 801 F.2d at 331). *See also Diamond v. Wyrick,* 757 F.2d 192, 193 (8th Cir.1985); *Nelson v. Solem,* 714 F.2d 57, 60 (8th Cir.1983). "A fundamental purpose of the due process clause is to allow the aggrieved party the opportunity to present his case and have its merits fully adjudged." *Pollock v. Baxter Manor Nursing Home,* 716 F.2d 545, 546–47 (8th Cir.1983). This means that the person facing deprivation of a protected interest must receive notice and an opportunity for a hearing. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Further, due process "incorporates notions of fair notice or warning." *Geiger v. City of Eagan,* 618 F.2d 26, 28 (8th Cir.1980). *See also Smith v. Gougen,* 415 U.S. 566, 572, 94 S.Ct. 1242, 1246, 39 L.Ed.2d 605 (1974). To argue, as much of petitioner's supplemental brief did, that an information failed to give fair notice of criminal charges is to make an argument going to the very heart of the most basic notions of due process.

Additionally, petitioner argued that the result of the variance was the absence of any evidence whatsoever to support the findings of the trial court. Supplemental Brief at 10, 17. It is well-settled that due

process prohibits a conviction if "it is found upon the record evidence adduced at trial that no rational trier of fact could have found proof beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979). Petitioner's argument to the Nebraska Supreme Court that the variance between the information and the proof at trial left him convicted of a crime for which no evidence was adduced to support the conviction was well within the mainstream of this branch of constitutional litigation.[2]

There has been no procedural default in this case. The failure of petitioner to raise the issue litigated here at trial or in his original brief in the Nebraska Supreme Court was excused when the Nebraska Supreme Court invited supplemental argument and resolved petitioner's claim on the merits. The supplemental brief of petitioner fairly presented his constitutional claim. It made reference to a specific provision of the Constitution. It cited a state case discussing a federal due process issue. It made notice and variance of proof arguments which are at the heart of due process jurisprudence, arguments which caused a majority of the judges of the court to recognize the existence of a constitutional issue. Petitioner fairly presented his constitutional claim to the Nebraska Supreme Court, and this court may reach the merits of that claim.

### MERITS

■ Petitioner was charged with one crime, tried for another, convicted of the crime with which he was originally charged, and had his conviction affirmed by a divided appellate court without any specific identification of the particular crime of which he convicted. The separate opinions of the judges of the Nebraska Supreme Court indicate that the court found the issues raised by petitioner's case to be knotty indeed, as do I. My review of sim-

ilar constitutional cases, however, leads me to the conclusion that due process requires petitioner's conviction to be set aside. I must therefore recommend that the writ of habeas corpus be granted.

In *Cole v. Arkansas*, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948), the petitioners were charged with violation of § 2 of an Arkansas statute making it a crime to assemble at a place where a labor dispute existed. The information in that case did not refer to the specific statute, but used language describing the petitioners' offense which was substantially identical to that of § 2. *Id.* at 198, 68 S.Ct. at 515. The prosecutor proceeded on the theory that the petitioners had violated § 2, and requested that § 2 be read to the jury. *Id.* at 199, 68 S.Ct. at 516. The trial judge instructed the jury on the basis of § 2. *Id.* Petitioners were convicted, at trial, of a violation of § 2. *Id.* On appeal to the Arkansas Supreme Court, the petitioners raised several arguments regarding the constitutionality of § 2. The Arkansas Supreme Court refused to pass on the constitutional challenges, stating that although the information charged a violation of § 2, it also charged a violation of § 1 of the same act and there was evidence adduced at trial to support a conviction of § 1. *Id.* at 200, 68 S.Ct. at 516. The Supreme Court, through Justice Black, unanimously reversed the convictions, holding that the Arkansas Supreme Court violated petitioners' due process rights, stating, "It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." *Id.* at 201, 68 S.Ct. at 517.

*Cole* is in some ways distinguishable from the instant case. Petitioner was charged with driving under a license permanently suspended pursuant to § 39–669.08 (§ 2, in the lexicon of *Cole*), a

---

2. Petitioner's reference to the Due Process Clause was made in conjunction with the both the argument that the state failed to provide fair notice and that the resulting conviction was not supported by proof. *See* Supplemental Brief at 10. In light of this reference, and the citation to a state case discussing a federal constitutional issue, I need not base my finding of fair presentment on the nature of the facts relied upon by petitioner in the Nebraska Supreme Court, and I do not do so.

statute pertaining to revocation for refusal to submit to tests. Ultimately, the trial court made specific findings, purportedly beyond a reasonable doubt, that he was guilty of violating § 39–669.08. The trial proceeded on the theory that petitioner's license was revoked pursuant to § 39–669.07 (§ 1, in the lexicon of *Cole*), a statute pertaining to convictions for driving while intoxicated. The evidence adduced at trial was related to § 39–669.07, not the statute petitioner was charged with, and ultimately convicted of, violating. The Nebraska Supreme Court affirmed, without specifying precisely which section petitioner was convicted of violating. *See Blankenfeld*, 229 Neb. at 412, 427 N.W.2d at 66.

The most significant difference between the instant case and *Cole*, therefore, is in the degree of difference between the notice of the charges against him and the subsequent proceedings. In *Cole*, the petitioners were charged and tried for one offense; the insertion of a different offense into the situation arose only at the appellate level. In this case, the variance between the information and subsequent proceedings began immediately, although it was interrupted by the specific finding of the trial court that petitioner was guilty of the charge in the information, not that for which he was tried.

There is some federal precedent to indicate, at least as a matter of due process notice, that this distinction would be significant. In *Hulstine v. Morris*, 819 F.2d 861 (8th Cir.1987), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988), the court held that "due process requirements may be satisfied if a defendant receives *actual notice* of the charges against him, even if the indictment or information is deficient." *Id.* at 864. *Accord, Wilkerson v. Wyrick*, 806 F.2d 161, 164 (8th Cir.1986), *cert. denied*, 481 U.S. 1071, 107 S.Ct. 2466, 95 L.Ed.2d 875 (1987); *United States v. Becton*, 751 F.2d 250, 256 (8th Cir.1984), *cert. denied*, 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985). Some argument could be made, although respondent does not directly make it, that petitioner had actual notice of the charges against him by virtue of his participation in the trial on the theory that he had driven a car while under permanent license suspension for three convictions for driving while intoxicated. The difficulty with application of this line of authority to this case, however, is that the cited cases arose in materially different factual contexts. *Hulstine* involved a plea of guilty pursuant to an amended information—which apparently set forth the correct charge—and the court concluded that actual notice was provided in the plea-taking proceeding. *Id.* at 864. *Wilkerson* was based on Missouri law holding that a person charged by information for felony murder could be convicted of second degree murder; actual notice there was to be derived from prevailing law. *Id.* at 164. In *Becton*, the defendant claimed a count of an indictment charging him with operating a continuing criminal enterprise was deficient because it did not specify the violations of narcotics laws constituting the enterprise; this argument was rejected because the remaining counts of the indictment specified the offenses. *Id.* at 256. Thus, the cited cases dealt with offenses which were, as a matter of law, related, or which had been set forth in amended charges.

The offenses at issue here are separate and distinct. In reaching this conclusion, I do not, as the respondent suggests in his brief, "adopt the statutory interpretation advanced by two dissenting judges" of the Nebraska Supreme Court. Brief of Respondent at 22. I recognize fully that the interpretation of Nebraska statutes is the province of the Nebraska Supreme Court, and it is not the province of this court to "resolve disputes between members of [that court] on the interpretation of Nebraska law." *Id.* It is clear, however, that under existing Nebraska law, the two statutes relevant to petitioner's case are separate and distinct offenses. Indeed, in *Blankenfeld* itself, a four-member majority of the court agreed on this issue. *See Blankenfeld*, 229 Neb. at 417, 427 N.W.2d at 69 (White and Shanahan, JJ., dissenting) (statutes "create separate and distinct offenses"); *Id.* at 420–21, 427 N.W.2d at 71 (Caporale and Fahrnbruch, JJ., concurring)

(offenses "admittedly separate and distinct"). Moreover, prior Nebraska law indicated that the offenses were separate and distinct. *See State v. Stabler*, 209 Neb. 298, 301, 306 N.W.2d 925, 927 (1981).[3] It is only the three-judge plurality which concluded that the offenses could be judicially merged into one. This court is bound to apply the conclusion of the majority, and the clear import of prior law, on this issue.

There is one case, also not cited by the respondent, which could be read to support the notion actual notice of a separate and distinct offense can cure a defective information which charges another offense in the instant circumstances. In *Franklin v. White*, 803 F.2d 416 (8th Cir.1986), *cert. denied*, 481 U.S. 1020, 107 S.Ct. 1904, 95 L.Ed.2d 510 (1987), the petitioner had been charged by information with capital murder. Trial proceeded on a theory that the petitioner was guilty of first degree felony murder, an offense having separate elements under Missouri law. Concluding that this was no due process violation because the petitioner had actual notice of the charges against him, the court stated:

> Before the trial, [petitioner] filed a motion to dismiss the indictment on speedy trial grounds; the motion averred that he was awaiting trial on *murder first degree.* At trial, both the prosecutor and [petitioner's] attorney proceeded as if [petitioner] were charged with the offense of murder first degree. The jury was given instructions for first degree murder, second degree murder, and manslaughter on Count I. No instruction for capital murder was requested or submitted. Finally, at the post conviction relief evidentiary hearing, [petitioner] testified he told his trial attorney when they first met that he understood that a warrant charging him with *first degree murder* and robbery had been issued.

*Id.* at 417–18 (*quoting Franklin v. State,* 655 S.W.2d 561, 564 (Mo.App.1983) (emphasis in original)). This reasoning would seem applicable to the instant situation, given that petitioner's entire trial proceeded on the theory that he was charged with violating § 39–669.07. However, like the other cases cited above, Missouri law held that the charges of capital murder and first degree murder were related sufficiently so that an information charging a defendant with capital murder was sufficient to permit an instruction on first degree murder. *Id.* at 418–19. In actuality, therefore, *Franklin* is no different from *Wilkerson*, where the court held that actual notice could be gleaned from statutes and case law construing the various degrees of murder in Missouri.

Even assuming that the actual notice doctrine was sufficient to cure the deficiency in the initial charge against petitioner, there is another respect in which these cases are inapposite. In each of the actual notice cases, the accused was ultimately convicted of the crime for which he was tried. Here, petitioner has been convicted of the crime for which he was charged, not that for which he was tried. The judge to whom the case was made the following findings:

> The court specifically finds that on or about December 25, 1986, Mr. Blankenfeld was operating a motor vehicle on a street or highway of the State of Nebraska within Lancaster County; at the time he was operating that vehicle, *that his driver's license had been permanently revoked pursuant to [Neb.Rev.Stat.] Section 39–669.08 and the court makes these findings beyond a reasonable doubt.*

Trial Transcript at 45:24–46:5 (emphasis supplied). Unlike the actual notice cases,

**3.** *Stabler* was decided under the §§ 39–669.07 and 39–669.08 as codified in 1978. While substantial revisions were made in those provisions in 1982, those revisions were not relevant to the question whether the offenses were separate and distinct. *See Blankenfeld,* 229 Neb. at 417, 427 N.W.2d at 69 (White, J., dissenting). In *Stabler,* the defendant was charged with refusing to submit to a chemical test under § 39–669.08 and driving while intoxicated under § 39–669.07 based on the same incident. After he was convicted of refusing to submit, he attempted to assert that conviction as a bar to the continued prosecution of the driving while intoxicated charge. The Nebraska Supreme Court rejected that argument, concluding that the offenses were separate and distinct. *Stabler,* 209 Neb. at 301, 306 N.W.2d at 927.

therefore, petitioner was not found guilty of the charge of which he was given "actual notice." He was instead found guilty of the charge which was included in the original information. The Nebraska Supreme Court simply affirmed the conviction, without specifying under what statute petitioner was convicted.

This leaves petitioner convicted of an offense, driving while under permanent suspension under § 39–669.08, for which there is no evidence to support the judgment of conviction. No one suggests that petitioner ever refused to submit to a chemical test, or that he was ever convicted of such an offense, or that his license was permanently suspended for three such convictions. Yet that is the offense of which he was convicted, and that is the conviction which the Nebraska Supreme Court affirmed. In so doing, a four-member majority of the court recognized that this offense is separate and distinct from the offense for which petitioner was actually tried—in between the erroneous information and the specific finding of guilt—driving while under a permanent suspension pursuant to § 39–669.07. A review of the transcript and records in this matter indicates that there is no evidence from which a rational trier of fact could have concluded that petitioner was guilty of the offense of which he was convicted. *Jackson*, 443 U.S. at 324, 99 S.Ct. at 2792. I therefore conclude that the result of the variance in this case is a conviction which cannot be sustained consistent with due process.

■ The respondent devotes much of his brief to arguing that any error here was harmless. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The thrust of this argument is that driving while under permanent suspension pursuant to either § 39–669.07 or § 39–669.08 is the same class of offense and carries the same penalty; that petitioner received his trial, at which he was permitted to defend against some charge; and that the evidence that petitioner committed the offense related to § 39–669.07 was overwhelming. The respondent has not cited, nor am I aware of, any federal case

holding that it is harmless error for an accused to be convicted of an offense of which he is clearly not guilty when the evidence adduced at trial shows that he is guilty of another similar but separate offense. I do not believe the harmless error doctrine can be extended to the point that the conviction of a person based on absolutely no evidence can be sustained because there was evidence he was guilty of another crime and the punishment for the crimes is the same.

There are those who will, with considerable force, argue that this resolution of this matter exalts form over substance, and that petitioner, who apparently has a record of being a threat to public safety, should not be "let off" on a "technicality." The "technicality" at issue here is that petitioner was charged with a crime which no one has ever claimed he actually committed, and was convicted of that crime, after a trial which related to a separate and distinct charge. That petitioner was apparently guilty of one crime does not mean that his conviction for another may stand, simply because the two carry the same penalty.

IT THEREFORE IS HEREBY RECOMMENDED, that the petition for writ of habeas corpus be granted, unless petitioner is given a new trial under *Neb.Rev.Stat.* § 39–669.07 within a reasonable time after the entry of judgment.

The parties are hereby notified that unless objection is made within ten days after they are served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.